THOMAS S. SUTHERLAND, Appellant, *v.* JOHN J. OLCOTT, et al., Executors, etc., Respondents.

A corporation has no implied authority to increase or diminish its capital stock, and can only do so when and as authorized by statute.

By the charter of the A. I. M. Co. (Chap. 401, Laws of 1867, as amended by chapter 203, Laws of 1873), its capital was fixed at $300,000 with power to increase from time to time as its business might require and its board of directors direct; it was made subject to the restrictions and liabilities contained in part 1, chapter 18 of the Revised Statutes, and its stockholders were made liable to the creditors of the company "until the whole amount of corporate stock fixed and limited by such company shall have been paid in." In September, 1872, the directors, in compliance with a resolution adopted at a meeting of the stockholders, passed a resolution that "the stock of this company be and the same is hereby increased to $600,000." In May, 1875, said board passed a resolution declaring that "the capital stock * * * be fixed and limited at $489,500." This amount was paid in and a certificate setting forth the resolution and stating that the amount "so fixed and limited had been paid in" was recorded in the county clerk's office. In an action against a stockholder to recover a debt of the company because of alleged non-payment in full of the stock, *held* that by the first resolution the capital stock was legally increased ; that having been so increased it could not be reduced "without the consent of the legislature" (1 R. S. 602, § 2); that no power to reduce could be implied from the words "fixed and limited" in the charter ; and as no express power to make a reduction was given. the second resolution was a nullity and the stockholder was liable.

*Sutherland* v. *Olcott* (29 Hun, 161), reversed.

(Argued January 24, 1884 : decided February 26, 1884.)

APPEAL from judgment of the General Term of the Supreme

Court, in the third judicial department, entered upon an order made February 2, 1883, which affirmed a judgment in favor of defendants entered upon a decision of the court on trial at Special Term. (Reported below, 29 Hun, 161.)

This action was brought originally against Thomas W. Olcott, the present defendants' testator, a stockholder of the Olcott Iron Manufacturing Company, to recover a debt of the corporation, on the ground that its capital stock had not been paid in.

The material facts are stated in the opinion.

*Olin A. Martin* for appellant. By the proceedings had and resolution adopted by the stockholders and directors of the corporation on the 9th and 11th days of September, 1872, the capital stock of this company became and was fixed and limited at $600,000. (Laws of 1867, chap. 401, § 6; Laws of 1873, chap. 203; *State* v. *M. F. Ass'n,* 3 Zab. [N. J.] 195; 1 Sandf. Ch. 280, 305.) Whether the corporate stock has been properly increased is a question the State alone can raise — not a stockholder, when sued by an assignee of the corporation for unpaid subscription. (*Pullman* v. *Upton,* 96 U. S. Sup. Ct. [60th] 328, 329; *Chubb* v. *Upton,* 95 id. [50th] 665, 668; 8 Gray, 596, 598; 13 Metc. 314.) The amount of capital stock having been increased to $600,000, it could not be reduced without the consent of the legislature. (2 R. S. [6th ed.] 389, § 6.) It is of no consequence whether the plaintiff, in his action against the company, declared upon the protested notes or the original indebtedness. (*Parrott* v. *Colby,* 6 Hun, 55; 71 N. Y. 597; *Jagger Iron Co* v. *Walker,* 76 id. 521; *James* v. *Cowing,* 82 id. 449, 457–459.) The law respecting individual liability is not penal at all. (*Craver* v. *Braintree Manuf. Co.,* 2 Story, 450; *Van Hoon* v. *Whitlock,* 2 Edw. Ch. 310.)

*G. L. Stedman* and *S. O. Shepard* for respondents. The capital stock of the Olcott Iron Manufacturing Company was fully paid in before the debt or contract upon which this action is founded was made by such company. (Laws of 1867, chap.

401, p. 957; Laws of 1873, chap. 203, p. 334.) The act of 1873 repeals *pro tanto* the act of 1867, under which the Olcott company was originally incorporated, upon the well-settled principles of construction of statutes. (*Rochester* v. *Barnes*, 26 Barb. 662; *Dexter, etc., Plankroad* v. *Allen*, 16 id. 15.) As the certificate was filed in proper shape to be recorded, with a request to the county clerk indorsed thereupon to record, it will be presumed to have been done as of the time of filing. (2 R. S. [5th ed.] 55, § 48; *Boynton* v. *Hatch*, 47 N. Y. 225.) Suit can only be maintained against a stockholder after a suit against the corporation, a judgment therein and an execution returned unsatisfied. (*Handy* v. *Draper*, 89 N. Y. 336; *Parrott* v. *Colby*, 6 Hun, 55; 71 N. Y. 597; Manufacturing Act of 1848, § 24; *Bonell* v. *Griswold*, 80 N. Y. 135.)

ANDREWS, J. The second section of the act (Chap. 431, Laws of 1867) incorporating the Albany Iron Manufacturing Company, fixed the capital stock at $300,000, with power to the company to increase the same from time to time as its business might require and as its board of directors might determine, to a sum not exceeding $1,000,000, and empowered the company to organize and commence business when $100,000 of the capital stock should be actually subscribed and $25,000 paid in in cash. The sixth section declared that the stockholders should be severally individually liable to the creditors of the company to an amount equal to the amount of stock held by them respectively, for all acts and contracts of the company, and subjected the corporation to all the restrictions and liabilities contained in the eighteenth chapter of the first part of the Revised Statutes. The liability of stockholders to creditors, imposed by this section, was absolute and unconditional to an amount equal to the amount of stock held by them respectively, and was not made to depend, as does the liability of stockholders under the general law for the incorporation of manufacturing companies (Chap. 40, Laws of 1848) upon the payment in of the whole capital stock, and the filing of a certificate of payment. This liability was

changed and modified by chapter 203 of the Laws of 1873, entitled "an act to change the name of the Albany Iron Manufacturing Company, and to amend its charter in respect to the liability of its stockholders." The change in the original charter effected by this act was in the two respects mentioned in the title. It changed the original corporate name to that of the "Olcott Iron Manufacturing Company," and assimilated the liability of the stockholders to that imposed upon stockholders in manufacturing corporations organized under the general law, by declaring "that they shall be jointly and severally liable for all debts that may be due or owing to all their laborers, servants and apprentices for services performed for such company, and shall be severally and individually liable to the other creditors of the company to an amount equal to the amount of stock held by them respectively, for all debts and contracts made by such company, *until* the whole amount of corporate stock fixed and limited by such company shall have been paid in; such liability being in accordance with the provisions of sections 10 and 18 of the act entitled 'An act to authorize the formation of corporations for manufacturing, mining, mechanical, or chemical purposes,' passed February 17, 1848, and the provisions of section twenty-four of said act shall also apply to the stockholders of said company" (§1). Section ten of the Manufacturing Corporations Act is the one which declares the general rule of liability of stockholders; section eighteen imposes a liability for debts to laborers, servants and apprentices, without the qualification in section ten ; section twenty-four exempts stockholders from liability for debts contracted by the corporation, not to be paid in one year, enacts a short statute of limitations, and makes judgment and execution returned unsatisfied against the corporation conditions precedent to the stockholders' liability.

This action was originally brought against the defendants' testator in his life-time, upon his alleged liability as a stockholder in the Olcott Iron Manufacturing Company, to recover the amount of a debt owing by the company to the plaintiff, for which he had recovered judgment against the

company April 17, 1876, for $7,520.94, and upon which execution against the company had been issued and returned unsatisfied. The judgment was recovered upon two notes, dated October 25, 1876, given for work and materials performed and furnished by the plaintiff in the repair of the furnaces of the company, and other work under a contract between the plaintiff and the company, made in May, 1875. The original defendant was the holder of three hundred shares of the stock of the Olcott Iron Manufacturing Company of the par value of $100 each, from as early as November, 1873, until his death. The precise time when he became a stockholder does not appear, but a paper containing his assent to mortgaging the property of the company, and representing that he was the holder of three hundred shares of the stock, was filed in the Albany county clerk's office, November 25, 1873.

The general question upon which the case depends is whether, at the time the plaintiff's debt was contracted, the capital stock of the Olcott Iron Manufacturing Company was paid up in full. If the capital stock was then paid up in full, it is conceded that the plaintiff cannot recover. On the other hand, if the capital stock was not then paid up in full, it is equally plain that the defendants are liable. Upon the latter assumption the case is brought directly within the statute of 1873, which declares that the stockholder shall be liable to the creditors of the company " until the whole amount of the capital stock fixed and limited by the company shall have been paid in." No question arises upon the conditions in section 24 of the Manufacturing Corporations Act. It is not questioned, that the remedy against the company was pursued within the time limited by that section, nor that the plaintiff's debt was payable within a year after it was contracted.

The solution of the question of the liability of the defendants requires that the court shall determine the validity and legal effect of two independent transactions disclosed by the record, *first*, the attempted increase of the capital stock of the company to $600,000, by resolution of the directors, passed

September 11, 1872, and *second*, the action of the directors, by resolution passed May 10, 1875, fixing and limiting the capital stock at $489,500, and the filing of a certificate in the clerk's office of Albany county July 15, 1875, that the whole capital stock so fixed and limited had been fully paid in. If the capital stock was legally increased to $600,000, by the action of the directors September 11, 1872, and no valid reduction was subsequently effected, then the whole capital stock has never been paid in. On the other hand, if the capital stock was legally fixed at $489,500, by the resolution of May 10, 1875, and the filing of the certificate, there is no liability of stockholders to creditors of the company or at least to creditors who became such after such resolution, for the reason that the whole amount of the reduced capital was paid in in full prior to the filing of the certificate. These two transactions will be separately considered.

The original charter, as has been stated, fixed the capital stock of the corporation at $300,000, but authorized a majority of the directors to increase the same from time to time, as its business might require, to a sum not exceeding $1,000,000. On the 11th of September, 1872, the directors at a meeting of the board passed the following resolution: "*Resolved*, That agreeably to a resolution adopted at a stockholders' meeting of this company, held on the 9th inst., the capital stock of this company be, and the same is, hereby increased to $600,000, for the purpose of erecting and putting into operation two blast furnaces, and the necessary working capital." The stockholders at a meeting, referred to in this resolution, passed a resolution requesting the directors to increase the stock to an amount sufficient to erect and put in operation two blast furnaces, and to furnish working capital, but specifying no amount. When this action on the part of the stockholders and directors was taken, the full amount of the original capital of $300,000, fixed by the charter, had not been subscribed, and only about $100,000 had been paid in.

The first question is, was the capital stock legally increased to $600,000 by the resolution of September 11, 1872. We

entertain no doubt that this was the legal effect of the action of the directors. The power to increase the stock to the limit of $1,000,000 was by the charter vested in the company, to be exercised through the directors, subject only to the limitation that the business should require an increase, but of this the directors of necessity were the judges, and so long as they acted in good faith in exercising the power, their determination was conclusive. No mode of exercising the power conferred is prescribed. The Manufacturing Corporations Act contains specific provisions regulating the proceedings for increasing or diminishing the stock of corporations formed thereunder. But no similar provisions are contained in the charter in question, nor does it by reference incorporate the provisions of the Manufacturing Corporations Act, nor is there any general law affecting corporations, regulating the subject. The charter of the company neither requires the assent of the stockholders to an increase of stock, nor provides for any public record of the action of the company. The only thing the charter requires, in order to effect a valid increase of stock within the limit fixed, is that a majority of the directors shall determine in favor of an increase, and their determination, shown by the records of the corporation declaring an increase *in præsenti*, fulfills all the requirements of the charter. This was the character of the resolution of September 11, 1872. It declared that the capital stock " be, and the same is hereby increased to $600,000." It related to the present, and not to the future. The company, from the time the resolution was passed, acted upon the assumption that the capital was increased. It immediately commenced to procure subscriptions upon the basis that the capital stock was $600,000. In November, 1873, it mortgaged its property for $250,000, after having obtained the consent in writing of stockholders representing four thousand two hundred and five shares of stock of the par value of $100 each, in which consent the subscribers certify that the capital stock is divided into shares of $100 each, and that they owned the number of shares set opposite their respective names. If the stock had

not been increased by the resolution of September 11, 1872, the number of legal shares could not have exceeded three thousand. Our conclusion on this point is that on and after September 11, 1872, the legal capital stock of the company was $600,000.

It remains to consider the subsequent action of the company, purporting to fix and limit the capital stock to $489,500. On the 10th of May, 1875, the directors of the company passed the following preamble and resolution: "WHEREAS, the stockholders at a meeting held May 8, 1875, unanimously resolved that the capital stock of the company be fixed and limited in accordance with the act of incorporation at $489,500, and a certificate thereof filed in the office of the county clerk; therefore *Resolved*, That the capital stock of the Albany Iron Manufacturing Company be fixed and limited at $489,500, and that a certificate to that effect be properly prepared and sworn to, and filed in the office of the county clerk as required by the general manufacturing law. *Resolved*, That all resolutions, heretofore adopted, fixing or limiting the capital stock of this company be, and hereby are rescinded."

These resolutions were passed in pursuance of the request of the stockholders at a stockholders' meeting held May 8, 1875. The sum of $489,500 represented the sum, theretofore subscribed and paid in of the capital stock of the company. On the 15th of July, 1875, the company filed in the clerk's office of Albany county a certificate signed by the president and directors, certifying the resolution of the directors fixing and limiting the capital stock at $489,500, and that the whole amount "so fixed and limited had been fully paid in," and that the whole stock had been issued.

This action of the company, if valid, was in legal effect a reduction of the capital stock from $600,000 to $489,500, and the inquiry is whether this reduction was authorized. The legal capital stock of a corporation is that fixed by its charter, or by authority derived from the legislature. A corporation has no implied authority to increase or diminish its capital stock. "If," says PARKER, Ch. J., in *Salem Mill Dam Corp.* v. *Ropes* (6 Pick. 23), "a corporation is created with a fund

limited by the act, it cannot enlarge or diminish that fund but by a license from the legislature, and if the capital stock is parcelled out into a fixed number of shares, this cannot be changed by the corporation." (See also *Droitwich Patent Salt Co.* v. *Curzon,* L. R., 3 Exch. 42 ; *In re Financial Cor.,* L. R., 2 Ch. App. Cas. 714 ; *Smith* v. *Goldsworthy,* 4 Q. B. 430 ; Morowitz on Corp., § 230.) The act of 1867, incorporating the Albany Iron Manufacturing Company, confers no power upon the corporation to reduce its capital stock. The only power to change it from the sum of $300,000 is found in the provision we have quoted, and that is a power to increase, and not a power to diminish. · (See opinion SHAW, Ch. J., *L. & W. C. R. R. Co.* v. *Chandler,* 13 Metc. 314.) On the contrary the charter subjects the corporation to the restrictions and liabilities contained in chapter 18, part 1 of the Revised Statutes, and that chapter expressly provides that it shall not be lawful for the directors of any company " to reduce the said capital stock without the consent of the legislature." (1 R. S. 602, § 2.) The Revised Statutes, in the chapter referred to, impose a limited liability upon stockholders who have not paid in the full amount of their shares, for the benefit of creditors (1 R. S. 600, § 5), and the policy of the prohibition requires that it should be applied as well to a reduction of nominal as of actual capital. The prohibition is broad and unqualified, and unless the sense and reason of a statute require it, courts cannot restrain its general application. (See *Strong* v. *Brooklyn Cross Town Railroad Co.,* 93 N. Y. 426.) Nor is the power to reduce the stock of the Iron company given by the act of 1873. The implication of such a power is claimed to arise from the words in the first section, "until the whole capital stock fixed and limited by such company shall have been paid in." The words "fixed and limited," it is said, imply a power to reduce as well as to increase. We think the words do not justify this contention. The sentence is a part of the clause defining and limiting the liability of the stockholders. When the act of 1873 was passed, the capital

stock was fixed and limited at $600,000. The words "fixed and limited" refer primarily to an existing situation. But the power to increase the stock, contained in the original charter, was not exhausted, nor was it taken away by the act of 1873. The liability to the extent prescribed by that act would apply in case of a subsequent increase of stock up to $1,000,000. The act of 1873 gives no affirmative power to fix and limit the amount of the capital stock. The charter in the first instance fixed and limited the capital stock at $300,000. The company in 1872, under the power to increase the stock, fixed and limited it at $600,000, retaining the power to further increase it within the ultimate limit of $1,000,000. Each successive exercise of the power would be fixing and limiting the capital stock. The act of 1873 confers no new power upon the company to change or alter the capital stock, and it cannot be supposed that the legislature intended by the blind method suggested to put it in the power of the corporation to reduce the capital stock without making provision for existing creditors, nor can such an implication be indulged, to repeal the positive prohibition of the Revised Statutes. We are of opinion, therefore, that the attempt to reduce the capital stock was a nullity—that it was not authorized by the original charter, nor by the act of 1873, and was prohibited by the Revised Statutes. The provisions of the Manufacturing Corporations act upon this subject have no application to the corporation in question, nor were the proceedings in conformity therewith.

The contract under which the plaintiff's debt was incurred was made in the same month in which the resolutions reducing the stock were passed but whether before or after the 10th of the month, does not appear. The work was commenced in June and completed in July or August. It does not appear that any notice was given of the change in the capital prior to July 15, 1875, when the certificate was filed, and that was not notice, for the reason that the provision for filing a certificate of the stock being paid up, contained in the Manufacturing Corporations Act, does not seem to apply to this corporation. But independently of

this question, we think the plaintiff, upon the facts disclosed in this record, was entitled to recover.

The judgment should be reversed and new trial granted.

All concur except MILLER and DANFORTH, JJ., not voting.

Judgment reversed.