## O. R. Cooke *v.* James L. Marshall, Appellant.

191 315
s196 200

*Corporations—Right to issue stock—Charter.*

A corporation has no right to issue stock, nor to increase or reduce its stock, without specific legislative authority to do so.

*Corporations—Cemetery companies.*

The Chartiers Cemetery Company, incorporated by the Special Act of April 5, 1862, P. L. 419, with authority to establish a cemetery, but without express authority in the act to issue stock, has no power to issue stock, and any stock issued by it or any increase thereof is invalid.

Argued Nov. 12, 1898. Appeal, No. 68, Oct. T., 1898, by defendant, from judgment of C. P. No. 1, Allegheny Co., March T., 1897, No. 684, on case stated. Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Case stated on quo warranto.

From the case stated it appeared that on April 5, 1862, a corporation, named the Chartiers Cemetery Company, was created by special act of assembly; that immediately after the organization of the company, a certain amount of stock was issued, which was afterwards increased; that on February 15, 1893, an informal meeting of some of the stockholders was held, changing the number of the board from five to seven, and electing a new board. At a meeting of the so-called new board, O. R. Cooke, plaintiff, was selected as secretary and treasurer, all against the personal protest of J. L. Marshall, defendant, whereupon, on May 4, 1894, he, with Moses Chess, organized a new board, wholly ignoring all idea of capital stock and share stock, elected "associates" and officers, and Mr. Marshall has ever since claimed to be the lawful secretary and treasurer. The stock board, however, has always since February, 1893, actually controlled the entire management of the cemetery grounds and property, excepting the corporate seal and books of the company, which have always been in Mr. Marshall's possession. Regular meetings, monthly and annual, have been held by each of the hostile boards to this time.

The question involved was whether the Chartiers Cemetery Company had power to issue stock, and whether the plaintiff

who had been elected secretary and treasurer by the holders of stock issued by the company was the lawful secretary and treasurer.

The facts appear by the opinion of the Supreme Court.

The court entered judgment for plaintiff. Defendant appealed.

*Error assigned* was the judgment of the court.

*William M. Watson* and *C. S. Fetterman*, with them *J. J. Miller*, for appellant.—Bonds and not stock should have been issued for the land: Thompson on Corporations, sec. 5697; 2 Cook on Stock, etc., sec. 764; McMasters v. Reed, 1 Grant's Cases, 36; Seymour v. Spring Forest Cemetery Assn., 19 N. Y. Supp. 94; Gordon v. Preston, 1 Watts, 385.

The creation of the stock was wholly contrary to the purpose of the charter and void, for it sought to divert the control and management of the company away from the plan intended by the charter, and sought to convert a corporation created for general welfare into one for private control and gain: Evergreen Cemetery Assn. v. Beecher, 53 Conn. 551.

If the creation of the stock or the voting power attached to it be a matter of doubt, then that doubt requires a decision against the stock, for no corporation can adopt a doubtful way of paying for its land, and wherever a corporate power is doubtful it is denied: Pearce v. R. R. Co., 7 Am. Law Reg. 409; R. R. Co. v. Clarke & Thaw, 29 Pa. 146; Bank of Penna. v. Com., 19 Pa. 144; Bank of Easton v. Com., 10 Pa. 442; Com. v. R. R. Co., 27 Pa. 339.

*A. W. Duff*, for appellee.—Whenever anything is authorized, and especially, if as matter of duty required to be done by law, and it is found impossible to do that thing unless something else not authorized in express terms be also done, then that something else will be supplied by necessary intendment: Broom's Legal Maxims, 486.

Charters of incorporation frequently prescribe the main objects of the companies formed under them, authority to use the means necessary to attain these objects must, therefore, be supplied by implication: 1 Morawetz on Private Corporations,

sec. 320; Com. v. Erie, etc., R. R. Co., 27 Pa. 339; Phila. &
Sunbury R. R. Co. v. Lewis, 33 Pa. 33; McMasters v. Reed, 1
Grant's Cases, 36; Com. v. Detwiller, 131 Pa. 614; Kirksey v.
Florida, etc., Co., 7 Florida, 23.

Statutes are to be construed as may best effectuate the inten-
tion of the makers, which sometimes may be collected from the
cause or occasion of passing the act, and when discovered, it
ought to be followed with judgment and discretion in the con-
struction, though that construction may seem contrary to the
letter of the statute: Big Black Creek Imp. Co. v. Com., 94 Pa.
450; Com. v. Fraim, 16 Pa. 163.

OPINION BY MR. JUSTICE GREEN, May 8, 1899:

The Chartiers Cemetery Company was created by an act of
assembly approved the 5th day of April, 1862, P. L. 419. The
1st section of the act created certain named persons, and other
persons who might become their associates, into a body corpo-
rate "by the name, style and title of the Chartiers Cemetery
Company, and by that name shall have perpetual succession
and shall be capable in law to have and use a common seal and
from time to time change the same; to hold, purchase and dis-
pose of property, real or personal, sue and be sued, plead and
be impleaded in any court of law or elsewhere to ordain, pass
and put in execution all such laws, rules and regulations not
contrary to the constitution and laws of the United States or
of this commonwealth, as shall be necessary or convenient for
carrying into effect the objects of the company, and generally
to do all such other matters and things as are incident to a
corporation." By the 3d section it is made the duty of the
corporators to establish a cemetery on the land of James L.
Marshall not less than thirty nor more than 100 acres in extent.
The 4th section authorizes the corporation to lay out the ground
into lots, plots, avenues, lanes, sites for offices, dwellings for
its necessary officers or servants, chapel for religious services,
etc., and to sell and convey by deed or otherwise lots, plots,
etc., to individuals, societies or congregations. The remaining
sections contain minor provisions for the regulation and man-
agement of the cemetery.

After the passage of the act the corporators met and organ-
ized the company and passed a resolution to establish a ceme-

tery on the ground designated in the act, containing thirty-two acres and seventy-five perches, "and for this purpose the capital stock of the said Chartiers Cemetery Company shall be $8,000, divided into 160 shares of the par value of $50 each." A committee was appointed to take subscriptions and on May 14, 1862, the full amount of stock was subscribed by several persons, and the said stock was issued to J. L. Marshall and his associates in payment for the cemetery grounds. At successive meetings after that the stock was increased, first to $50,000, and later to $150,000, in consideration of various improvements and expenditures made upon the ground. The question then is, was the original creation and issue of stock lawful, and if so were the subsequent increases lawful? The issue was made for the purpose of performing the original duty to establish a cemetery. It was necessary to acquire land in order to create the cemetery, and the corporators adopted the method of obtaining the land by issuing stock in payment for it. It is not denied that the corporation might have borrowed money for this purpose and made a mortgage on the property to secure the payment of it, although no such power was expressly conferred by the charter. On the question whether capital stock might be issued for the same purpose where the charter has not specially authorized a capital stock, not a single authority is cited for or against in the paper-books of either party. There is no doubt that this particular corporation did possess full corporate powers, and there is also no doubt that it was not only authorized but expressly enjoined to create a cemetery of not less than thirty acres in extent, and after that to lay it out into lots and plots, and roads and walks, and to do various other things necessary to its proper development as a cemetery. No method of raising money to acquire the land and do these various things was provided in the charter. The ordinary method in which such things are done is by the creation and issue of capital stock, and it may be argued with apparent reason that it is a necessary implication from the grant of corporate existence and powers that a right to issue stock is conferred. It was decided by this Court in Gordon v. Preston, 1 Watts, 385, that a corporation which by its charter is authorized to purchase in fee or for any less estate " all such lands, tenements and hereditaments, and estate, real and personal, as shall be necessary and conven

ient for them in the prosecution of their works; and the same to sell and dispose of at their pleasure," has power to mortgage its real estate to secure the payment of a debt. In that case there was no power to mortgage conferred by the charter. It is also established by very numerous authorities that corporate stock may be issued in payment for land and other property purchased by the corporation. The rule is thus stated in 1 Cook on Stock and Stockholders, sec. 18: " An issue of stock for property is one which finds support, not only in the decisions, but in the daily transactions of corporations, and the law does not compel the corporation and the subscriber to go through the useless form of a payment by the corporation to the subscriber of the value of the property, and an immediate repayment of the same money by the subscriber to the corporation on his subscription." Numerous supporting authorities are cited in the notes. But while this may be true it does not reach the present question. In those cases the right to issue stock under the authority of the charter was unquestioned, and it was only a matter of paying for the stock with the property transferred. In this case however the charter confers no power to issue any stock, and for such a company as this no such power is needed. It is remarkable that it is so difficult to find either text book discussion of this subject or adjudicated cases. Whether a corporation without capital provided for in its charter may create and issue capital stock is certainly a fundamental and radical matter in corporation law. In 1 Cook on Stock, etc., sec. 279, it is said, " The capital stock of all incorporated companies is generally fixed by the charters which give them an existence." Sec. 281, " In the absence of express authority from the state a corporation has no power whatsoever to increase or reduce the amount of its stock, and any attempt on the part of the corporation, either by the corporate officers or by the stockholders, to do so is wholly illegal and void. . . . Where the attempted increase or reduction of the stock is not authorized by the charter, not even the unanimous assent and agreement of all the parties concerned will legalize it." For this last proposition the case of Droitwich Patent Salt Co. v. Curzon, L. R. 3 Ex. 35, is cited, and an examination of that case shows that it fully supports the text. In support of the general proposition as expressed in sec. 281, supra, there

are a number of citations, one of which is Scovill v. Thayer, 105 U. S. 143, and another is Sutherland v. Olcott, 95 N. Y. 93. Of course, these matters of increase and decrease of capital stock are now regulated by the statute law of the several states, including our own. But the principle upon which the adjudged cases proceed is that the capital stock which is fixed by the charter can neither be increased nor decreased by the officers or the stockholders. In 1 Morawetz on Private Corporations, sec. 434, the doctrine is thus stated: "A corporation has no implied authority to alter the amount of its capital stock where the charter has definitely fixed the capital at a certain sum. The shares of a corporation can neither be increased nor diminished in number or in their nominal value unless this be expressly authorized by the company's charter," citing many cases. This being the law, it is not easy to see how the two increases of capital stock made in the present case can be sustained. The first increase was made on May 4, 1868, from $8,000 as originally established to $50,000, and it was done by a resolution passed at a special meeting of the stockholders. The next increase was made on October 5, 1874, from $50,000 to $150,000, also at a meeting of stockholders. It follows hence that, the increase of stock being void, all the elections held thereunder since that time are void, and confer no authority upon the persons elected.

This ruling would dispose of the present contention, but it is perhaps desirable that the original creation of the $8,000 of capital stock should be considered. It is extremely difficult to understand under the foregoing decisions how any issue of capital stock by this company can be regarded as valid. The company was chartered to establish a cemetery. While a cemetery company is not necessarily a religious or charitable corporation, yet in many instances it is of that character, and perhaps as a rule this is so, yet they may be established as merely private enterprises, and carried on for profit. But, in either case, if the charter confers no right or power to create capital stock it is difficult to understand how any right to create and issue such stock has any existence. If capital stock may neither be increased nor diminished without an express power to that effect how can any stock be created or issued when there is no capital stock fixed by the charter, and no power is given to create it?

In 1 Cook on Corporations, sec. 8, the following definition of capital stock is given: "Capital stock is the sum fixed by the corporate charter as the amount paid in or to be paid in by the stockholders for the prosecution of the business of the corporation, and for the benefit of corporate creditors." This definition is quoted and incorporated in the opinion of the Supreme Court of New Jersey in the case of American Pig Iron Storage Co. v. The State Board of Assessors, 56 N. J. L. 389. Mr. Justice DEPUE, delivering the opinion, said: "Capital stock is the sum fixed by the charter as the amount paid in or to be paid in by the stockholders for the prosecution of the business of the corporation, and for the benefit of the creditors of the corporation." In the foregoing citations the necessity of fixing by the charter the amount of the capital stock in cases where the authority to issue capital stock is to be conferred is fully expressed. It is true however that corporations without capital stock may be created, and may have and exercise valid corporate authority, and of these there are very numerous instances. But the proposition remains that where a right to issue any capital stock is claimed the authority to make the issue must be found in the charter. In the case of Barry v. The Merchants' Exchange Co., 1 Sandford's Chancery Rep. 280, much learning is exhibited in the opinion in the description of various kinds of corporations. Amongst other things it is said: "On this subject of the capital stock of a corporation the elementary treatises are comparatively barren. It is the aggregate amount of the funds of the corporators which are combined together under a charter for the attainment of some common object of public convenience or private utility. This amount is usually fixed in the act of incorporation, although we have seen in the statutes of 1823 one exception to this practice. It is thus limited in reference to the convenience of the intended corporators and for the information and security of the public at large."

In the case of Scovill v. Thayer, supra, Mr. Justice WOODS, delivering the opinion and discussing the question of the right to increase or decrease the stock of a corporation, said: "As a general rule corporations can have and exercise only such powers as are expressly conferred on them by the act of incorporation, and such implied powers as are necessary to enable them to perform

their prescribed duties. . . . And it is well settled that a corpo·ration has no implied power to change the amount of its capital as prescribed in its charter, and that all attempts to do so are void (citing a number of authorities). In this case the attempt to increase the stock of the company beyond the limit fixed by its charter was ultra vires. The increased stock itself was therefore void. It conferred on the holders no rights and subjected them to no liabilities."

In the case of Sutherland v. Olcott, supra, the corporation, having the right to increase its capital stock, which was fixed by the charter at $300,000, from that sum to $1,000,000, did increase it to $600,000, which was held valid. It then undertook to decrease the amount to $489,500, and its right to do this was the question in controversy. In the opinion the Court said: "This action of the company if valid was in legal effect a re-duction of the capital stock from $600,000 to $489,500, and the inquiry is whether this reduction was authorized. The legal capital stock of a corporation is that fixed by its charter, or by authority derived from the legislature. A corporation has no implied authority to increase or diminish its capital stock. 'If,' said PARKER, J., in Salem Mill Dam Corp. v. Ropes, 6 Pick. 23, 'a corporation is created with a fund limited by the act, it cannot enlarge or diminish that fund but by a license from the legislature, and if the capital stock is parceled out into a fixed number of shares, this cannot be changed by the corporation,'" (citing a number of authorities).

Now if the doctrine of these cases (and there are many more of them) be true, and the act of increasing or decreasing the capital stock of a corporation without specific charter power to do so is a void act because it is ultra vires, how can it be true that a corporation may issue any capital stock without having specific legislative authority to do so? We cannot see. If it is ultra vires to increase, it is ultra vires to issue any stock where no power to do so is conferred by the charter. The power to create corporate capital stock is a legislative function, and in any given case, in order that such stock may have a legal existence, the function must be exercised.

We are therefore of opinion that all the issues of capital stock made by the Chartiers Cemetery Company were ultra vires and void, and that the plaintiffs were, and are, not the legally con-stituted board of trustees of the said company.

The judgment of the court below is reversed and judgment is now entered for the defendant with costs under the case stated.