## In re DURYEA POWER CO.

(District Court, E. D. Pennsylvania. January 8, 1908.)

### No. 2,768.

1. BANKRUPTCY—TRUSTEES—ELECTION—RIGHT TO VOTE.

A creditor of a bankrupt who is also a debtor to the bankrupt's estate is not entitled to vote on the selection of a trustee where he has not made his indebtedness good.

2. CORPORATIONS—STOCKHOLDERS—FORMAL SUBSCRIPTION.

Where corporate stock was allotted to, issued, and received by a stockholder, but was not in fact fully paid though it so recited, it was no defense to his liability for the balance due thereon that he had not formally subscribed for such stock.

3. SAME—STATUTES—INCREASED STOCK.

Gen. Corp. Act Pa. 1874 (P. L. 81) § 17, as amended by P. L. 1876, 32, authorizes payment for corporate stock in property as well as cash, but declares that no corporation shall issue stock except for money, labor, or property actually received, and that all fictitious increase of stock or indebtedness in any form shall be void; that each corporation may provide for the issue of deferred stock in payment for real or personal property, and if so provided it shall be expressly stated in the charter or in a certificate to be made and recorded. *Held* that, where a corporation increased its stock, and neither the charter nor the proceedings for such increase disclosed that the stock was based on a patent, and did not show any valuation put thereon, the fact that the corporation's president recited that such additional stock was issued for cash or property did not relieve him from liability to pay the balance of the par value remaining unpaid on the stock allotted to and received by him so far as necessary to pay the claims of creditors.

4. BANKRUPTCY—ELECTION OF TRUSTEE—PROXIES—REPRESENTATIONS.

Where, in bankruptcy proceedings against a corporation, the attorney for petitioning creditors claimed that the president and certain other officers of the corporation were largely indebted to it for unpaid stock subscriptions, and that the president desired the election of a trust company as trustee which was identified with certain other interests represented by him it was not improper for such attorney to obtain proxies for use in the election of a different trustee by means of letters stating his claim as to the officers' liability, and that it would be to the interest of the unsecured creditors to select a trustee not identified with the president's interest, which letters contained no materially false statement of fact.

## In Bankruptcy.

The facts shown by the referee's report with reference to the alleged objectionable communications written to creditors to obtain proxies to be voted in the election of a trustee were as follows:

Charles E. Duryea who had been an officer of a bankrupt corporation wrote a letter to the attorneys for certain creditors in which he asserted that his desire to have the affairs of the corporation wound up in bankruptcy was for the purpose of determining whether the stock originally subscribed by some of the officers of the company had been paid for, and that he was endeavoring to get enough of the creditors together to elect a trustee that would not be favorable to those who did not wish to be investigated; that the present receiver, the Pennsylvania Trust Company, had for its attorney one Cyrus Derr, who was also attorney for H. M. Sternbergh, president of the bankrupt corporation, who the writer claimed had not fully paid for his stock, and that the writer considered such relation too close for the best interest of the unsecured creditors; that he also believed that Sternbergh, as president of the corporation, forced it into the hands of the receiver in order to shake out

other stockholders and creditors and acquire the plant cheaply, and that a trustee should be elected who was not so closely connected with Sternbergh's interest. The representations in this letter that Derr was attorney for the trust company was incorrect, but this letter did not result in obtaining any proxies for Duryea or those interested in his behalf. Other letters, however, were written by Duryea and Geo. W. Wagner, who was the attorney for the petitioning creditors, setting out a history of the formation of the corporation and of the receivership, stating various ways that Sternbergh was indebted to the company to the amount of some $26,000 on his unpaid stock subscriptions, and soliciting proxies to be used in the election of the Berks County Trust Company as trustee, which was entirely independent of any interest identified with Sternbergh, so that it would be entirely free to prosecute claims against any of the officers of the company for the benefit of the unsecured creditors. None of the statements contained in these letters were shown to be false or fraudulent, and the referee therefrom found that the proxies procured thereby had not been obtained by fraud.

Geo. W. Wagner, for petitioning creditors and trustees.
Cyrus G. Derr, for Herbert M. Sternbergh.
Andrew A. Leiser, for creditors.

J. B. McPHERSON, District Judge. Of the two questions arising under this certificate, the first has to do with the refusal of the referee (Samuel E. Bertolet, Esq.) to permit Herbert M. Sternbergh to vote upon his claim in the election of a trustee. The claimant intended to vote for the Pennsylvania Trust Co., which received 76 votes, cast by creditors holding about $12,000 of claims, while the Berks County Trust Co., which was declared elected, received 77 votes, cast by creditors holding claims aggregating about $45,000. Since, therefore, it is evident that if the claimant had been permitted to vote there would have been no election by the creditors, and the present trustee could not have been declared their choice, it becomes important to determine whether the referee was right in rejecting the claimant's offer to vote. The correctness of this ruling will be found to depend upon the relation borne by the claimant to the bankrupt corporation at the time when the proceedings in this court were begun. Admittedly, he was then a creditor, but, if he were also a debtor, I do not understand his counsel to deny that he was properly excluded from the vote, the fact being also conceded that he has not made his indebtedness good. At all events, the action of the referee is in accord with the decision of this court in Re Wiener & Goodman Shoe Co. (D. C.) 96 Fed. 949, and, for the present at least, the point must be regarded as settled. Was he, therefore, a debtor of the corporation? Or, to ask an equivalent question, may the creditors of the corporation treat him as a debtor? The answer is to be found in facts that are not in dispute, and may be summarized as follows:

On February 13, 1900, an agreement was entered into between Charles E. Duryea, Henry Millholland, Henry Crowther, and the claimant, of which the paragraphs now material are these:

"The said parties, in consideration of the mutual covenants hereafter set forth, agree to organize a corporation forthwith under the laws of Pennsylvania, for the manufacture and sale of automobiles, motors and propellers, to be called Duryea Power Company, with a paid up capital of $100,000, divided into 1,000 shares of $100 each, whereof said Herbert M. Sternbergh shall re-

ceive 510 shares, said Charles E. Duryea 300 shares, said Henry Millholland 95 shares, and said Henry Crowther 95 shares.

"Upon the incorporation of said company, in full consideration of said issue of stock to them, said Herbert M. Sternbergh shall contribute $10,000 cash and within sixty days thereafter $15,000 cash additional; and said Herbert M. Sternbergh, Henry Millholland and Henry Crowther shall contribute to said corporation the entire and absolute ownership of all patents pertaining to the manufacture or use of automobiles, motors and propellers or parts of either heretofore granted to or now or hereafter controlled by either of them, and all inventions of the description aforesaid heretofore made by either of them, or which either of them shall hereafter make, and all patents which may be granted therefor; said Charles E. Duryea, in consideration of the issue of stock to him and the sum of $10,000 to be paid as hereafter provided, shall contribute to said corporation licenses to use all patents and inventions now or hereafter controlled by him, or by the Duryea Manufacturing Company of Peoria, Illinois, pertaining to the manufacture or use' of motors, propellers and light automobiles," etc.

Of these persons, Duryea alone, either then or afterwards, owned patents of the kind described, it being the intention of all the parties to form a corporation to put his inventions upon the market. Pursuant to this agreement, the bankrupt corporation—the Duryea Power Company—was incorporated on April 6th, under the corporation statutes of Pennsylvania, with a capital stock of $1,000, divided into 10 shares of $100 each, of which the claimant subscribed for 4 shares. He, with others, signed and acknowledged the certificate of incorporation, was named as a director therein, and was elected president on April 20th. Upon the last-named day a meeting of the stockholders was held to take action upon a proposed increase of stock from $1,000 to $100,000, and the claimant and two other persons were appointed judges to conduct the election. The formalities required by the Pennsylvania law relating to the increase of capital stock were duly complied with, and all the stockholders, including the claimant, voted for the increase. On the same day a second agreement was signed, of which the essential provisions are as follows:

"This agreement made the 20th day of April, 1900, between Herbert M. Sternbergh, of the city of Reading, in the county of Berks and state of Pennsylvania, of the one part, and the Duryea Power Company, a corporation of the state of Pennsylvania, of the other part, witnesseth:

"The said Herbert M. Sternbergh has paid to the said Duryea Power Company in cash the sum of $10,000 lawful money of the United States of America, the receipt whereof is hereby acknowledged, and agrees to pay the sum of $15,000 additional in like lawful money to the said Duryea Power Company on or before the 5th day of June, 1900, and hereby assigns and sets over to the said Duryea Power Company, its successors and assigns, the entire, absolute, full and exclusive ownership of all patents pertaining to the manufacture or use of automobiles, motors and propellers, or parts of either, heretofore granted to or now controlled by him," etc.

"In consideration whereof the said Duryea Power Company agrees to issue to said Herbert M. Sternbergh 510 full paid shares of the capital stock of the said Duryea Power Company upon the payment of the whole amount of $25,000 above mentioned, including, however, in the said 510 shares, 4 shares now standing in his name on the books of the said company."

This agreement was signed by the claimant individually, and also as president of the bankrupt corporation. On October 27th, as president of the company, he certified to the Secretary of the Commonwealth as follows:

"This is to certify that by virtue of the consent of the stockholders of the Duryea Power Company, authorizing an increase in the capital stock thereof from $1,000 to $100,000, given at an election duly held for that purpose on the 20th day of April, 1900, the capital stock of said company has been increased from $1,000 to $100,000; said additional stock being issued for cash and property."

On the same day a certificate of stock for 510 shares of the par value of $100 was issued to the claimant, and receipted for by him. He has carried out his agreement to pay $25,000 "in full consideration for said issue of stock," but he has neither paid nor contributed any other money or property therefor. The balance of the par value, $26,-000, is said by the other creditors to be still owing, and this is the ground upon which the referee declared him to be a debtor and excluded him from voting. In my opinion, the exclusion was right. That he continues to be liable to the bankrupt's creditors for all, or for part, of this unpaid balance, seems to me scarcely a debatable question. It is of no importance that he did not formally subscribe for 510 shares of the stock; by virtue of his agreements they were to be allotted to him in consideration of $25,000 to be paid in cash, and they were actually so allotted, were issued and received. This is equivalent to a formal subscription, and carries with it the same obligation. Neither is it of importance that the stock was to be issued "full paid," and that it was so issued with the intention of all parties then interested that his acceptance should carry no further obligation. Although described as "full paid" the stock had only been partly paid for in cash, and no declaration or action by the corporation, or by the claimant, or by both, could take the place of the truth concering this matter, so far as to affect the rights of the corporation's creditors.

But, under the statutes of Pennsylvania, shares of stock may be paid for in property as well as in cash, and payment in one is usually as effective as payment in the other. Upon this point, section 17 of the general corporation act of 1874 (P. L. 81) as amended in 1876 (P. L.) 32, provides as follows:

"Every corporation created under the provisions of this act or accepting its provisions, may take such real and personal estate, mineral rights, patent rights and other property, as is necessary for the purposes of its organizations and business, and issue stock to the amount of the value thereof, in payment thereof, and the stock so issued shall be declared and taken to be full paid stock, and not liable to any further calls or assessments; and in the charter and the certificates and statements to be made by the subscribers and officers of the corporation, such stock shall not be stated or certified as having been issued for cash paid into the company, but shall be stated or certified in this respect according to the fact; and the executors or administrators of any deceased tenant in common of lands, mines and mineral rights so proposed to be taken may, and they are hereby authorized, to convey the individual estate and interest of such decedent therein to such company, receiving therefor so much stock in such company as the said decedent would have been entitled to receive in his lifetime, to be held in the same manner as the lands: Provided, that no directions or limitations contained in any last will and testament of such decedent shall be in any manner interfered with: And provided, that before making such conveyance, such executors or administrators shall give sufficient security, to be approved by the orphans' court having jurisdiction of their accounts, for the faithful application of the stock received therefor; no such corporation shall issue either bonds or stock except for money, labor done or money or property actually received, and all fictitious

increase of stock or indebtedness in any form shall be void; every such corporation may provide for the issue of deferred stock in payment for such real or personal estate or mineral rights, and if so provided, it shall be expressly stated in the charter filed, or in a certificate to be made and recorded, or in the acceptance of this statute, to be filed by any corporation accepting its provisions, with the amount of such deferred stock, and the consideration of the same, and the terms on which the same shall be issued; and the said stock may be made to await payments of dividends thereon, until out of the net earnings at least five per centum has been declared and paid upon the other full paid stock of the corporation."

Moreover, it has been decided by the Supreme Court of the state that the parties interested in the formation of a corporation may value a patent or other property at whatever sum they please; and it is evident, I think, that no legal harm is done thereby, if due notice of such valuation is given in the proceedings for incorporation or for the subsequent increase of the capital stock. Speaking generally, and laying aside the question of a fraudulent valuation, if the parties interested in the corporation choose to base the capital stock largely upon property instead of upon cash, and notify the public that they have made such a choice, describing the property sufficiently and stating the sum at which it has been valued, the transaction is valid and the stock may issue "full paid" without being liable to objection on the ground that only part of the par value has been paid in cash. But, if this result is to be attained, notice is essential, and notice includes such a description and valuation of the property as will identify it. and will show also what sum in cash it is intended to represent. Upon principle there should be no difference in this respect between the original proceedings to obtain a charter and subsequent proceedings to increase the capital stock, and no difference is recognized by the Pennsylvania statutes. The act of February 9, 1901 (P. L. 3), relating to increase of capital stock, makes no specific provision on the subject, probably regarding it as already covered by section 17 of the act of 1877, (P. L. 81), but the approved forms in use before the state department show clearly that definite notice is necessary in both proceedings. Whitworth, Corporations in Pennsylvania, §§ 1365 and 1392; Eastman, Private Corporations in Pennsylvania, §§ 1500 and 1512. See, also, Shannon v. Stevenson, 173 Pa. 419, 34 Atl. 218; Cooke v. Marshall, 191 Pa. 315, 43 Atl. 314; Commonwealth v. Gray's Mineral Fountain Co., 20 Phila. 405, s. c. 8 Dauph. Co. Rep. 47.

Nothing of the kind was attempted in the present case. Neither in the original charter, nor in the proceedings to increase the capital stock, does it appear that the stock is based upon a patent at all, and in neither proceeding is a valuation put upon the right. It is true that the claimant, acting as president of the corporation, certified that "said additional stock (was) issued for cash and property," but such a vague and general statement does not give the necessary information to the public. It does not set forth how much cash was paid, and what kind of property was contributed in lieu of cash; and it gives no information concerning the quantity of the property, or the value that has been put upon it. I may point out, also, but without laying stress upon the fact, that the proceedings to increase nowhere state that the new stock is to be issued full paid and nonassessable, or that the property for which

it is issued is necessary for the purposes of the organization and business of the corporation. So far as creditors are concerned, therefore, the certificate of increase, although it speaks of "property," affords no protection to the claimant; for, in legal effect, the reference to property may be disregarded, and the certificate then amounts to no more than an untrue declaration that the increase was wholly based upon cash. Under these circumstances, the claimant cannot escape liability upon so much of the par value of his stock as he has not paid for in cash. To what extent he may be thus liable, is not now involved, and is not decided. It is enough to justify the ruling of the learned referee that a liability to some extent exists; and of this, at least, I entertain no doubt.

The second question is raised by the claimant's objections to certain communications that were made to creditors by counsel and by other persons interested in the choice of the Berks County Trust Co. as trustee. These communications are said to have influenced the election improperly, and a good deal of testimony was taken upon the subject. It is unnecessary to set out the facts in detail concerning this dispute; they will be found in the referee's report, and I shall only add concerning them that, after due consideration, I find nothing materially objectionable in the communications referred to.

The action of the referee upon each of the foregoing questions is therefore affirmed.