## STERNBERGH v. DURYEA POWER CO.

(Circuit Court of Appeals, Third Circuit. May 8, 1908.)

No. 19.

1. BANKRUPTCY—CORPORATIONS—UNPAID STOCK—RIGHTS OF TRUSTEE.

On a corporation becoming a bankrupt its trustee acquires no higher rights to recover stock liabilities from stockholders than the bankrupt had.

2. CORPORATIONS—STOCK SUBSCRIPTIONS—PAYMENT FOR STOCK—PATENTS.

Pa. Act April 29, 1874 (P. L. 81, § 17), provides that corporations, created thereunder or accepting its provisions, may take patent rights necessary for their business, and issue stock to the amount of the value thereof in payment, and that the stock so issued might be declared and taken as full-paid stock, without liability for further calls or assessments. Held, that where a corporation increased its capital stock to $100,000, $85,000 of which was issued in payment for certain patent rights, and S. contributed $10,000, which was applied to the purchase of certain of the patent interests, and also $15,000 representing the balance of the corporation's capital, such transaction having been unchallenged by all the parties in interest for six years, the stock, as against the corporation, should be treated as fully paid, it being immaterial that S., in the division of the stock, in fact secured 810 shares for a cash contribution of $25,000.

3. SAME—RETURNS TO STATE DEPARTMENT.

Where the capital stock of a corporation was issued for patents and cash, a return of the transaction, made to the state department, that the capital stock of the corporation had been increased from $1,000 to $100,-000, the additional stock being issued for cash and property, having been received by the department without objection, was sufficient, in the absence of bad faith or fraud.

Petition for Revision of Proceedings of the District Court of the United States for the Eastern District of Pennsylvania, in Bankruptcy.

Cyrus G. Derr and John G. Johnson, for petitioner.
Andrew A. Leiser and George W. Wagner, for appellee.

Before DALLAS, GRAY, and BUFFINGTON, Circuit Judges.

BUFFINGTON, Circuit Judge. In the bankruptcy proceeding of the Duryea Power Company in the court below, Sternbergh, the petitioner for review, sought to prove his claim of $14,000, and to vote in the election of trustee. The referee held Sternbergh was indebted to the company in $26,000, on 510 shares of its stock, and rejected his claim. On hearing, the court approved the action of the referee. Thereupon Sternbergh petitioned for review.

The facts are not in dispute, and the substantial question involved is the alleged liability of Sternbergh on the stock. After a careful study of the facts we are of opinion the referee failed to grasp the significance of the transactions as a whole, and what the agreements between the parties sought to effect. No question of good faith is involved, nor is there any doubt that what the parties had in view could lawfully be done by fitting papers and proceedings. Mr. Hiester, a lawyer of high standing, has testified to the purpose of the parties,

and frankly assumes the blame if the papers and proceedings fail to effect such purpose. The entire matter was one between the four men, Sternbergh, Duryea, Mulholland, and Crowther. No one else was interested, and no question is involved of any outside party buying stock in the Duryea Power Company, the present bankrupt. Duryea and the Duryea Manufacturing Company of Peoria, Ill., had some patents, which the four parties contemplated acquiring, with a view to making auto-freight trucks at Reading, Pa. To obtain license under these patents it was necessary for Duryea to pay the Peoria Company $10,-000. Presumably, Mulholland and Crowther had some interest in the patents, or rendered Duryea some service in carrying out the proposed arrangement, for otherwise it cannot be explained how they got their $19,000 of minority stock in connection with Duryea. They contributed no part of the money, which Sternbergh furnished. The latter was the moneyed man of the four, and it was arranged that he contribute $25,000 to a proposed company of $100,000 capital. For this he was to receive 510 shares, the majority, of full-paid shares of $100 each. Duryea was to contribute the patents, and was to receive $10,000 in cash, to enable him to get the patent licenses from the Illinois Company, 300 shares of full-paid stock, and employment at $3,000 per year. Mulholland and Crowther were to get 190 shares of full-paid stock. All parties were to assign to the company inventions made by them. From this it is clear that the substance of the arrangement was that the patents were capitalized at $85,000. Sternbergh furnished $10,000 in cash, by which licenses could be obtained from the Illinois Company, and his $15,000 constituted the working capital of the proposed company. For this Sternbergh obtained the majority stock, and Duryea the minority, which for some, to him presumably sufficient, reason he divided between himself, Mulholland, and Crowther. The papers were drafted, and the proceedings had in furtherance of this general plan. The agreement between the four was entered into February 13, 1900; in pursuance thereof the Duryea Power Company, the bankrupt, was chartered on April 6, 1900, with a capital of $1,000. On April 20, 1900, that company voted to increase its capital stock to $100,000, and evidently deferred making return of such increase until the patents were acquired. On June 11, 1900, Duryea and the Duryea Manufacturing Company of Peoria, Ill., entered into an agreement, with the Duryea Power Company of Reading, Pa., to license under the patent, in consideration of the payment of the $10,000 to the Peoria company and the stock to Duryea. On October 29, 1900, the return of the vote to increase stock was sworn to. On October 31st it was accepted, and filed in the office of the Secretary of State, where it has remained unquestioned. On October 27, 1900, a certificate for 510 shares of full-paid stock was issued to Sternbergh, in pursuance of a resolution of the Duryea Power Company of April 20, 1900. Under these facts is Sternbergh liable for further payments on his stock? On this company becoming bankrupt its trustee acquired no higher rights than the bankrupt possessed (First Nat. Bank v. Pennsylvania Trust Co., 124 Fed. 968, 60 C. C. A. 100; Davis v. Crompton [C. C. A.] 158 Fed. 735), and it is clear that company had no right of action

against Sternbergh.  Under the Pennsylvania act of April 29, 1874 (P. L. 81, § 17):

"Every corporation created under the provisions of this act, or accepting its provisions, may take such * * * patent rights * * * as is necessary for the purpose of its * * * business, and issue stock to the amount of the value thereof, in payment thereof, and the stock so issued shall be declared and taken to be full-paid stock, and not liable to any further calls or assessments."

Having taken these patents at a valuation to which every person in interest agreed, and having enjoyed them for all these years while they were running, it is clear this company cannot question or repudiate the transaction, and assess or collect on the full-paid stock which it issued for them.  This is not the case of an uncollected or unpaid assessment or of a subscription.  It is an indirect attempt to invalidate an executed transaction, which has stood unchallenged and ratified by six years' acquiescence and enjoyment of the consideration paid therefor. If now open to attack, the only ground in fact on which it could be done is that the patents were not worth the $85,000 at which they were taken, but of this there is no evidence.  Duryea testified of their value up to $40,000; that his prior price for them was $100,000, and the referee sustained an objection to the petitioner's question, which sought to show by Duryea they were worth in excess of $40,000.  Presumably that objection would not have been made by his counsel, unless his answer would have disclosed that fact.  Nor was the return made to the state department that "the capital stock of said company has been increased from $1,000 to $100,000, said additional stock being issued for cash and property," either untrue or misleading.  Patents are personal property (Shaw Valve Co. v. City of New Bedford [C. C.] 19 Fed. 753), and were aptly returned and described as property.  A large number of returns printed in petitioner's brief shows the return in this case is substantially in the form followed by the Pennsylvania bar. And in view of the absence of bad faith and fraud and of the acceptance, without objection, of this return by the department, we see nothing to warrant our challenging its sufficiency.  Holding these views, we are of opinion Sternbergh was not indebted to the bankrupt company on his stock, and the referee should have allowed him to prove his claim.

The order of the court approving the action of the referee will be reversed, and the case remanded, with instructions to allow the petitioner to do so.  In view of the fact, however, that no allegation is made against the trustee, we see no reason why, at this late day, the selection of it should be disturbed.