KISKADDEN v. STEINLE.

(Circuit Court of Appeals, Sixth Circuit. February 4, 1913.)

No. 2,252.

1. BANKRUPTCY (§ 455*)—APPEALS—DECISIONS REVIEWABLE.

An order made on the petition of a trustee to reconsider a claim previously allowed is one allowing or rejecting a claim, and reviewable on appeal, under Bankr. Act July 1, 1898, c. 541, § 25a (3), 30 Stat. 553 (U. S. Comp. St. 1901, p. 3432), where the amount of the claim is sufficient.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 916; Dec. Dig. § 455.*

Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

2. CORPORATIONS (§ 216*)—LIABILITY OF STOCKHOLDER—LAW GOVERNING.

Whether a stockholder of a bankrupt corporation, who obtained his stock in exchange for property worth less than the par value of the stock, is liable to the corporation or its creditors for the difference in value, is a question governed by the local law.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 829–834; Dec. Dig. § 216.*]

3. BANKRUPTCY (§ 282*)—CORPORATIONS (§ 232*)—LIABILITY OF STOCKHOLDERS—ENFORCEMENT BY TRUSTEE.

Under the law of Ohio, as settled by decision, that partners who organize a corporation, to which they transfer the partnership property in exchange for stock, are to be treated as original subscribers for the stock, each of whom has paid on the stock issued to him a sum equal to the actual value of his interest in the property transferred, and is a debtor to the corporation for the unpaid balance, such liability may be enforced by the trustee in bankruptcy of the corporation for the benefit of general creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 426; Dec. Dig. § 282;* Corporations, Cent. Dig. §§ 879, 880, 883, 884; Dec. Dig. § 232.*]

4. BANKRUPTCY (§ 154*)—CLAIM PROVABLE—SET-OFFS.

Bankr. Act July 1, 1898, c. 541, § 68a, 30 Stat. 565 (U. S. Comp. St. 1901, p. 3450), providing that, in case of mutual debts or mutual credits between the estate of a bankrupt and a creditor, the account shall be stated, and one debt shall be set off against the other, and the balance only shall be allowed or paid, does not apply in case of a creditor of a bankrupt corporation, who is also a stockholder and indebted to the corporation for an unpaid balance on his stock subscription.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 451–455; Dec. Dig. § 154;* Set-Off and Counterclaim, Cent. Dig. § 123.]

5. BANKRUPTCY (§ 326*)—CORPORATIONS—CLAIMS BY STOCKHOLDER—EQUITABLE SET-OFF.

In such case, however, the claim of the creditor stockholder should not be allowed until his indebtedness to the bankrupt has been collected by plenary suit, and in the event it is found uncollectible the amount may be applied on his claim as an equitable set-off.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 514; Dec. Dig. § 326.*]

Appeal from the District Court of the United States for the Western Division of the Northern District of Ohio; John M. Killits, Judge.

In the matter of the Fostoria Undermuslin Company, bankrupt. From an order denying his petition for the disallowance in part of the claim of Carl F. Steinle, Alexander Kiskadden, trustee, appeals. Reversed.

The trustee sought to have a claim of Steinle re-examined and diminished, which had been allowed December 4, 1909. The claim was for $16,549, with interest from October 23, 1909. The claim was based upon five promissory notes, two for $6,500 each and three for $1,000 each, bearing date March 26, 1909, and falling due on different dates between that time and October 26th following, with 6 per cent. interest. The notes were executed by the C. C. Anderson Manufacturing Company (whose name was changed to the Fostoria Undermuslin Company) to the order of A. V. Bauman, and were indorsed by Bauman, Henry Hughes, and C. O. Frick. Bauman discounted the paper and turned the money over to the Fostoria Company. When the notes matured, the company was unable to pay them, and they were taken up by Bauman and held by him until November 2, 1909, when they were assigned to Steinle. The facts alleged in support of the right to have the claim diminished were, in substance, that Bauman subscribed for 300 shares, of the par value of $100 each, of the capital stock of the company, but did not fully pay for the shares, and so is indebted to the company for the balance remaining due upon his subscription; that Bauman was the real owner of the notes and the claim, but that, if it should be found that they were in fact owned by Steinle, since he obtained the notes after maturity, the claim in his hands was subject to a set-off to the extent of such balance.

In June, 1904, C. C. Anderson and Bauman formed a copartnership for the purpose of manufacturing muslin underwear, acquiring a factory, with goods and stock, and conducting the business at Fostoria, Ohio. They also purchased and removed to this factory certain equipment and goods of a company in Saginaw, Mich. In October, 1904, they incorporated a company under the laws of Ohio, with an authorized capital stock of $100,000; Anderson and Bauman each subscribing for 44 shares, J. J. Anderson for 10 shares, and Anna Rose G. Bauman and Helen May Anderson for 1 share each, these five persons being also the incorporators and directors. The company, through these directors, thereupon purchased the partnership property, business, and good will of Anderson and Bauman, and assumed the firm's obligations for the consideration of 602 shares ($60,200 par value) of what was characterized as "the fully paid and nonassessable stock" of the newly incorporated company. This was to include the shares subscribed, "and the issue of which was in full satisfaction of the obligations assumed by them and each of them by said subscription." In the summary of the evidence it appears that the real estate turned over to the corporation was purchased by Anderson and Bauman for $5,000; that the purchase of the articles at Saginaw was from a company that had gone into liquidation, which, after disposing of part of its property to others, sold the remainder to Anderson and Bauman for $7,500. The referee found that the property and articles of every kind turned over by the copartnership to the company in payment of the 602 shares of stock cost the firm from $27,500 to $32,500. The company sold 200 shares of its so-called treasury stock to Henry Hughes, one of the indorsers of the notes in dispute, at $67.50 per share. This price was made and accepted on the representation of Anderson and Bauman that they had invested $40,000 in the property turned over to the company, and the declared purpose was to sell the stock to Hughes at a price "that would let him in on the same basis as Anderson and Bauman," because "Hughes had originally intended to join the partnership." The referee found that the fair and reasonable value of all of the property, which Anderson and Bauman sold to the company, "did not exceed the sum of forty thousand ($40,000) dollars," and that the overvaluation of the property "was not due to error of judgment on the part of C. C. Anderson and A. V. Bauman and other directors of the corporation at the time of the transaction. * * * "

Of the 602 shares of stock received for the sale of the property, Bauman received 300 shares ($30,000 par value), and is still the owner of the stock.

The finding of the referee respecting these shares is as follows: "That at the time of the issue to him of the said three hundred shares of stock" of the company "Bauman was aware of the overvaluation of the property of Anderson and Bauman, and that his half interest in the partnership, for which he received the three hundred shares of stock of the par value of one hundred ($100) dollars each, was worth not to exceed twenty thousand ($20,000) dollars."

The referee ordered Steinle's claim of $16,549 to be reduced in the sum of $10,000, letting it stand as "allowed against the bankrupt" for $6,549, with interest. The court below reversed the referee's order, denied the petition of the trustee to disallow the claim, and dismissed the petition with costs. The case was brought to this court upon appeal prayed and allowed within 10 days of the date of the order made by the court below.

McCauley & Weller, of Tiffin, Ohio, for appellant.

King & Ramsey, of Sandusky, Ohio, and H. C. De Ran, of Fremont, Ohio, for appellee.

Before WARRINGTON and KNAPPEN, Circuit Judges, and McCALL, District Judge.

WARRINGTON, Circuit Judge (after stating the facts as above). We shall consider the case under the objections urged on behalf of appellee: (a) The case is not appealable; (b) no stock liability exists against Bauman; (c) such liability cannot be set off against the claim of Steinle.

[1] *The Appeal.* The object of the proceeding before the referee was to have the claim of Steinle, as previously allowed, reconsidered and in substantial portion disallowed. This involved a controversy of fact concerning the value of the copartnership property and the nature of the sale to the company, which resulted in the issue of 602 shares of the corporate stock in payment for the property; and it also embraced Bauman's part in the transaction, his half interest in the partnership property, and the 300 shares received by him of such 602 shares of the stock. The reversal in the court below of the order of the referee operated to restore and allow the claim as originally proved. It follows, we think, that the trustee instituted a proceeding in bankruptcy, which was appealable to this court under section 25a(3) (Act July 1, 1898, c. 541, 30 Stat. 553 [U. S. Comp. St. 1901, p. 3432]). Matter of Loving, 224 U. S. 183, 187, 32 Sup. Ct. 446, 56 L. Ed. 725; Cooper, Trustee, v. Miller, 203 Fed. 383 (C. C. A. 6th Cir.)

[2] *Alleged Stock Liability.* No opinion was handed down in the court below, and we have no means of ascertaining the views of the learned trial judge, except as they were stated in the arguments of counsel, and as they appear in their briefs. The claims that no liability of Bauman exists in respect of the 300 shares of stock received by him, and that, if there be any such liability, it cannot be set off against the claim of Steinle, present questions of some difficulty. However, since the promissory notes were past due when obtained by Steinle, it is not disputed that they were received by him subject to any defense of the company to which they would have been open in the hands of Bauman. If the facts are accepted, as in substance found by the referee, that the overvaluation of the partnership property was

not due to error in judgment of Anderson and Bauman and the other directors of the corporation at the time of the transaction, and that Bauman then knew that the portion of the property he was transferring to the company was $10,000 less in value than the par value of the stock he was receiving, we are met with the question whether proof of the claim must be allowed and payments made upon it out of the bankrupt's assets ratably with the claims of the general creditors, who confessedly are not indebted to the estate, without regard to the unpaid portion of the Bauman stock. Could Bauman have retained the notes and maintained this position? As pointed out in the statement, the corporation was organized under the laws of Ohio. Whether Bauman is liable for the unpaid portion of the stock he received is a local question, and is governed by the pertinent rule of decision of the Supreme Court of Ohio. Black v. Zacharie & Co., 3 How. 482, 511, 11 L. Ed. 690; Thompson v. Fairbanks, 196 U. S. 516, 523, 25 Sup. Ct. 306, 49 L. Ed. 577; Detroit Trust Co. v. Pontiac Savings Bank, 196 Fed. 29, 33, 115 C. C. A. 663 (C. C. A. 6th Cir.); In re Jassoy Co., 178 Fed. 515, 516, 101 C. C. A. 641 (C. C. A. 2d Cir.); Shaw v. Goebel Brewing Co., 202 Fed. 408 (C. C. A. 6th Cir.); Mishawaka Woolen Mfg. Co. v. Westveer, 191 Fed. 465, 466, 112 C. C. A. 109 (C. C. A. 6th Cir.).

[3] It has been laid down by the Supreme Court of Ohio (Gates, Adm'r, v. Tippecanoe Stone Co., 57 Ohio St. 60, 48 N. E. 285, 63 Am. St. Rep. 705), upon facts in effect kindred to those found by the referee here, that each partner will be regarded as an original subscriber for so much of the stock as is issued to him, and credited on his subscription for only the actual value of his interest in the partnership property transferred to the corporation in payment of the subscription, holding in the second paragraph of the syllabus, in which all the judges concurred:

"The balance left, after applying this credit, will be deemed a debt due from him to the corporation, and, therefore, corporate assets."

The way in which this conclusion of the court was reached may in part be indicated by a portion of the opinion (57 Ohio St. 78, 48 N. E. 287, 63 Am. St. Rep. 705):

"This attempt by McLain and his associates to dispose of their property at a fictitious or inflated value, to a corporation of their own creation—one designed and brought into existence chiefly for that purpose—should be regarded as a fraud upon the subsequent creditors of the concern, although no evil intent accompanied the transaction and the difference between the actual and the inflated value of the property so conveyed should be deemed unpaid subscription upon the stock issued in this way, whenever necessary to protect the rights of the corporate creditors."

This language is in harmony with the first paragraph of the syllabus, and we understand the decision still to express the law of Ohio on this subject. It is not claimed in the present case that the court below undertook to review the evidence offered before the referee, or to determine that such evidence did not sustain the referee's findings of fact. The claim is that the court relied on certain decisions, like In re Jassoy, supra, where the court followed a decision of the Court of Appeals of

New York, in which it was held that the liability of a person in a situation similar to that of Bauman does not exist in favor of the corporation; also Sternbergh v. Duryea Power Co., 161 Fed. 540, 88 C. C. A. 482 (C. C. A. 3d Cir.), where it was held (under a statute of Pennsylvania expressly authorizing corporations to take patent rights and issue stock therefor to the amount of their value, and providing, further, that the stock so issued "shall be declared and taken to be full-paid stock, and not liable to any further calls or assessments"), the facts adduced did' not present a "case of an uncollected or unpaid assessment or of a subscription," and, since the "trustee acquired no higher rights than the bankrupt possessed," recovery was denied; also In re Alleman Hardware Co., 181 Fed. 810, 812, 814, 104 C. C. A. 320, 324 (C. C. A. 3d Cir.), where it was found, reversing the court below, that:

"* * * * The value of the consideration of the stock was fairly debatable, and the corporation enjoyed, used, and did its entire corporate business for several years on the property conveyed to it, and where the property cannot be restored or the contract rescinded, and where no person here interested was in any way induced to act or was misled or wronged by the maintenance of that status, we think the corporation has no such right or claim against Gitt as prevents his unquestioned debt from participating in this distribution,"

—and again, following the settled rule that the rights vested in a trustee in bankruptcy are simply those of the bankrupt, the court held that proof of the claim should be allowed.

It is to be observed of all those cases·that they are not in accord with the rule of the Supreme Court of Ohio as expressed in the Gates Case: That the balance due upon the stock shall be "deemed a debt due from him [the person so receiving the stock] to the *corporation.*" It is scarcely necessary to say that the balance of Bauman's unpaid subscription cannot be regarded as "a debt due from him to the corporation," without according to the trustee in some form of action the right to recover such balance. Hence we cannot apply the rule recognized by the Supreme Court of the United States, in a number of decisions, to the effect that a contract made for the accomplishment of a legitimate and necessary object and in good faith between a corporation and its stockholders to dispose of its stock at less than its par value is binding on the company, although it may (or may not under certain circumstances) be treated as a fraud in law on its creditors and so not binding upon them, as, for example, in Scoville v. Thayer, 105 U. S. 143, 154, 26 L. Ed. 968; Sawyer v. Hoag, 17 Wall. (84 U. S.) 610, 619, 21 L. Ed. 731; Potts v. Wallace, 146 U. S. 689, 703, 13 Sup. Ct. 196, 36 L. Ed. 1135; Camden v. Stuart, 144 U. S. 105, 113, 12 Sup. Ct. 585, 36 L. Ed. 363; Clark v. Bever, 139 U. S. 97, 112, 11 Sup. Ct. 468, 35 L. Ed. 88; Handley v. Stutz, 139 U. S. 417, 437, 11 Sup. Ct. 530, 35 L. Ed. 227.

Nor does the rule expressed in the class of cases like York Manufacturing Co. v. Cassell, 201 U. S. 344, 352, 26 Sup. Ct. 481, 50 L. Ed. 782, have any relevancy to a case governed as this one is by the rule of the Gates Case; for the very point is that Bauman's debt was due, if at all, to the corporation, and is recoverable by its trustee for that reason. It is to be noticed and kept in mind that, aside from

those who took part in transferring the partnership property, it is not claimed that credit was ever extended to the corporation by any one having knowledge of the scheme for issuing nonassessable stock in payment for property worth materially less than the par value of the stock. Of course, as respects persons who might have given credit with knowledge of the scheme, a different question would be presented. This is recognized in the Gates Case, 57 Ohio St. 78, 48 N. E. 285, 63 Am. St. Rep. 705; also by this court in Rickerson Roller Mill Co. v. Farrell Foundry & Machine Co., 75 Fed. 554, 560, 23 C. C. A. 302. We therefore hold that, upon the hypothesis of the referee's findings, the balance of $10,000 found to be due from Bauman would be recoverable by the trustee (certainly ratably with other similar obligations of stockholders as far as necessary to meet corporate debts) in an appropriate suit brought for the benefit of the bankrupt estate.

[4] *The Right of Set-Off.* Can Bauman's liability be enforced by the trustee through the exercise of the right of set-off in a case like this? At first blush it would seem that the language of section 68a of the Bankruptcy Act, in connection with the rule in the Gates Case, would admit of the set-off claimed here; for section 68a extends to "all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor," and, as stated, the Ohio rule treats such liability as a debt due to the corporation. However we think the true interpretation of section 68, cls. "a" and "b", and of such rule is that, after the corporation becomes insolvent, any sum due upon a stock subscription is impressed with the character of a trust in favor of all the creditors alike, except only such as may have given credit to the company with knowledge of the scheme of stock issue. Hence to apply such an unpaid subscription as a set-off to an ordinary claim held by the subscriber against the corporation would be to appropriate the rights of the other creditors in the subscription debt to the exclusive benefit of the person owing it; or, on the other hand, it might, as respects his costockholders, subject him to the payment of more than his ratable share of the bankrupt's debts. It cannot be said, then, that the debts in question are in their nature both mutual and in the same right; nor that after the bankruptcy there was any reason for enforcing stockholders' liability or Bauman's ratable share thereof except for the equal benefit of all the creditors.

In Sawyer v. Hoag, supra, 17 Wall. at page 622, 21 L. Ed. 731, when passing upon a provision of the Bankruptcy Act of 1867 (14 Stat. p. 526, § 20), similar to section 68 of the present act, Justice Miller said:

"This section was not intended to enlarge the doctrine of set-off, or to enable a party to make a set-off in cases where the principles of legal or equitable set-off did not previously authorize it. The debts must be mutual; must be in the same right. The case before us is not of that character. The debt which the appellant owed for his stock was a trust fund devoted to the payment of all the creditors of the company. As soon as the company became insolvent, and this fact became known to the appellant, the right of set-off for an ordinary debt to its full amount ceased. It became a fund belonging equally in equity to all the creditors, and could not be appropriated by the debtor to the exclusive payment of his own claim."

To the same effect are Scammon v. Kimball, Assignee, 92 U. S. 366, 367, 23 L. Ed. 483; Scovill v. Thayer, supra, 105 U. S. 153, 26 L. Ed. 968; Babbitt v. Read (C. C.) 173 Fed. 712, 715; In re Howe Mfg. Co. (D. C.) 193 Fed. 524, 527; 1 Loveland on Bankr. (4th Ed.) p. 661, and note 4; Collier on Bankr. (8th Ed.) p. 796, and notes. And the rule that "unpaid subscriptions to the stock of a corporation constitute a trust fund for the benefit of its creditors" is stated in Fogg v. Blair, 139 U. S. at page 125, 11 Sup. Ct. 476, 35 L. Ed. 104, to be "the settled doctrine of this court"; and, further, in Scovill v. Thayer, 105 U. S. 156, 26 L. Ed. 968, it was held:

"Upon the bankruptcy of the company his obligation was to pay to the assignees, upon demand, such an amount upon his unpaid stock as would be sufficient, with the other assets of the company, to pay its debts. He was under no obligation to pay any more, and he was under no obligation to pay anything until the amount necessary for him to pay was at least approximately ascertained. Until then his obligation to pay did not become complete."

We have still to consider an important case recently decided by the Supreme Court of Ohio. It is Niles, Assignee, v. Olszak (87 Ohio St. ——, 100 N. E. 820, decided December 17, 1912, which holds:

"A stockholder in a savings and loan association organized under the laws of this state is entitled, when the association becomes insolvent, to set off, as against its assignee for the benefit of creditors, a claim for money which he has on deposit with the association against his liability for the unpaid part of his stock subscription."

That case is the nearest approach to this one of any other decided by the Supreme Court of Ohio, and so dispenses with the need of referring to other decisions of the court. We think the learned judge announcing the opinion pointed out facts which render the decision inapplicable here, when he said:

"The stock was not issued under the pretense of being or purporting to be fully paid, when in fact it was not paid for. There was no, contrivance to release the debt for the stock, and substitute a loan therefor. It is not a case in which a corporation had held itself out to the public as having a larger paid-up capital than it actually had. * * * The statute prescribes * * * that no such association shall commence business until at least *one-half of each subscription has been fully paid up.* There is no claim that this was not done, and the presumption is that it was done. The finding of facts shows that the association was duly organized under the statute. There is no claim that it ever pretended that any more than 50 per cent. of each subscription had been paid in, or that any one ever gave credit on the faith that all of its stock had been paid in full. * * * It is common knowledge that many of the subscribers to the stock of such savings associations make their deposits therein with the intention and understanding that such deposits shall be made and used for the purpose of paying for the stock. * * *"

Thus it may be fairly inferred that all creditors of the savings bank were chargeable with knowledge that only 50 per cent. of its capital stock had been paid in, and that it was understood that the deposits should be applied to the payment of the balance due on the subscriptions. This in principle agrees with what we have already pointed out as recognized by the same court in the Gates Case, and by this court in Rickerson Roller Mill Co. v. Farrell Foundry & Machine Co.,

respecting the rights of persons who extend credit to a corporation with knowledge of the arrangement under which its stock subscriptions have been made. It may well be that as to all such persons the unpaid subscriptions do not constitute a trust fund, in the sense that it is not open to set-off.

Furthermore, any suit rightly to enforce payment of unpaid stock subscriptions would have to be of a plenary character (In re Haley, 158 Fed. 74, 85 C. C. A. 404 [C. C. A. 6th Cir.] ; In re Remington Automobile & Motor Co., 153 Fed. 345, 347, 82 C. C. A. 421 [C. C. A. 2d Cir.]) ; and it does not appear that Bauman is a party to the present suit, although he appeared as a witness and so had notice of it. We are thus led to believe that the set-off was not permissible.

[5] What, then, should be done with the claim of Steinle? We have felt bound under the present record to assume that Bauman is solvent. If the claim be allowed and permitted now to share in the assets, according to the undisputed statement of counsel for appellee, Steinle would receive a sum nearly equal to the amount found by the referee to be due from Bauman upon his subscription. Still, if Bauman could meet his unpaid balance, not to speak of the liability of any of his costockholders, no ultimate loss to the other creditors would ensue. If, on the other hand, Bauman should not be able to pay anything remaining due on his subscription, Steinle (who stands no better than Bauman) would profit at the expense of the other creditors. In the latter event, however, the reasons for denying the set-off (or at least its equivalent in the nature of an equitable defense) against the Steinle claim would cease; for nothing would be gained by suit upon the subscription, and so nothing could be lost by the general creditors by applying whatever sum is really due from Bauman toward payment of the Steinle claim. Rolling Mill Co. v. Ore & Steel Co., 152 U. S. 615, 616, 14 Sup. Ct. 710, 38 L. Ed. 565.

Since it would be obviously inequitable to permit the Steinle claim to share ratably in the assets before properly disposing of the question of Bauman's obligation and his ability to pay it (In re Wiener & Goodman Shoe Co. (C. C.) 96 Fed. 949, 950, and In re Duryea Power Co. (D. C.) 159 Fed. 783, 784, the underlying principles of which we regard as applicable), we are constrained to hold that the order of the court below allowing the claim should be reversed, with costs; that all proceedings upon the Steinle claim be stayed, and all dividends that would accrue on such claim, if allowed, be withheld and preserved, until the Bauman debt and its availability be finally settled. If such debt be collected by the trustee, Steinle's claim shall be allowed in full; if by reason of his insolvency Bauman's debt is not collectible in whole or in part, Steinle's claim shall be accordingly reduced and the remainder allowed. An order will be entered reversing the cause, and remanding it for further proceedings, not inconsistent with this opinion.