## COOPER v. MILLER.

(Circuit Court of Appeals, Sixth Circuit. February 4, 1913.)

### No. 2,258.

**1. BANKRUPTCY (§ 440\*)—REVIEW—MODE—APPEAL.**

Where an order appealed from involved both the rejection and the allowance of claims each for more than $500, and a controversy of fact concerning the financial condition of the bankrupt at the time claimant received certain disputed payments, and whether claimant had reasonable cause to believe that such payments would, if enforced, effect a preference, the order was reviewable by appeal, authorized by Bankruptcy Act July 1, 1898, c. 541, § 25a (3), 30 Stat. 553 (U. S. Comp. St. 1901, p. 3432), and not by a petition to revise.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 915; Dec. Dig. § 440.\*

Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

**2. BANKRUPTCY (§ 164\*)—CLAIMS—PREFERENCES.**

Where claimant, shortly after he became president and manager of a hotel company, and within four months prior to bankruptcy, knew that the company was insolvent, and with such knowledge loaned to it $4,000 with which to pay taxes, etc., and thereafter he received payments on such debt prior to bankruptcy, such payments constituted a preference, which the trustee was entitled to recover; claimant being also precluded from proving the balance of the debt against the estate until the preferential payments had been returned.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 267; Dec. Dig. § 164.\*]

Appeal from, and Petition to Review, an Order of the District Court of the United States for the Western District of Kentucky; Walter Evans, Judge.

Petition by A. R. Cooper, trustee in bankruptcy of the New Galt House, against W. Scott Miller, to expunge certain claims because of an alleged preference. From a decree affirming a referee's order denying the claimant's right of subrogation and lien, but reversing so much of the order as disallowed a certain balance as a general claim, etc., the trustee appeals, and files a petition for review. Reversed and remanded on the appeal, and petition to revise dismissed.

Gifford & Steinfeld, of Louisville, Ky., for appellant.

Sheild & Campbell and Camden R. McAtee, all of Louisville, Ky., for appellee.

Before WARRINGTON and DENISON, Circuit Judges, and Mc-CALL, District Judge.

WARRINGTON, Circuit Judge. The only question contested is whether the trustee can treat as a voidable preference, and so recover of Miller, $2,056.50 which he, as president and manager of the bankrupt company, within four months of the bankruptcy, paid out of its funds to himself on account of a loan previously made by him to the company. The New Galt House Company, a corporation, was ad-

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

judged bankrupt and the trustee was elected in April, 1911. Miller became president and manager of the company April 1, 1910. He owned over 300 shares of its capital stock, and, while president, appears to have assisted the company by loans of money in different amounts to the extent of $10,000. Certain taxes of the city of Louisville were assessed against the property of the bankrupt as of September 1, 1909; one sum being for $3,073.68, and the other for $32.90, aggregating $3,106.58. When these taxes became due the company was unable to pay them, and Miller was unable to borrow money in its name. He borrowed $4,000 in his own name, and gave the money to the company to pay the taxes and "other debts," and on June 29, 1910, the company paid the taxes. December following, Miller, in his official capacity, executed a demand note in the name of the company in his own favor individually for the amount of the taxes so paid, and in April, 1911, made proof in bankruptcy of the note, claiming that the taxes were paid at the instance and request of the officers of the corporation to avoid accumulation of penalties and interest, crediting the company with two payments made upon the note, one January 9, 1911, of $1,406.50, and the other January 13, 1911, of $650, or $2,-056.50, stating that all interest had been paid to April 1, 1911, and leaving a balance due of $1,050.08. As to this sum he asserted a lien upon the property of the bankrupt, claiming subrogation to all rights of the city of Louisville for collection of such taxes.

It would seem that this proof of claim, and also of two other claims, one for $4,000 and another for $6,000, had been formally allowed by the referee; but, as the court below remarked, the record is confusing as to the two claims last mentioned. However, it is not important to consider any of the claims, except the one concerning the taxes and the effect of the two payments mentioned as having been made on account of the sum advanced by Miller for that purpose. On petition and amendment thereto of the trustee to re-examine and disallow this latter claim as respects the alleged lien, the referee disallowed the balance of $1,050.08 as a preferred claim, and ordered appellee to return the payments (amounting to $2,056.50), which were received by him, as stated, from the company on account of the total taxes paid; holding in substance that Miller was a volunteer, and entitled only to the rights of a general creditor as to the $4,000 loaned to the company at the time the taxes were paid, that the orders previously made allowing that claim, and also the additional claim of Miller for $6,000, be set aside, and the claims disallowed, and, further, that Miller could "have no claim against the estate allowed until such return is made."

[1] The court below affirmed the order of the referee denying the right of subrogation and lien, but reversed the other order, and directed the referee to enter an order allowing the balance of $1,050.08 as a general claim in addition to another one found to have been previously allowed as a general claim in favor of Miller for $6,893.42. Within ten days an appeal was prayed and allowed, but only to the order reversing the referee; and since that order distinctly involved both rejection and allowance of claims each for more than $500, also a controversy of fact touching the financial condition of the bankrupt at

the time Miller received the payments in dispute, and also the existence or not of reasonable cause on his part to believe that such payments would, if enforced, effect a preference (section 60b of the Bankruptcy Act [Act July 1, 1898, c. 541, 30 Stat. 562 (U. S. Comp. St. 1901, p. 3445)], as amended by Act June 25, 1910, c. 412, § 11, 36 Stat. 842 [U. S. Comp. St. Supp. 1911, p. 1506]), we think the case is rightly pending here upon appeal, under section 25a(3) of the Bankruptcy Act. Matter of Loving, 224 U. S. 183, 188, 32 Sup. Ct. 446, 56 L. Ed. 725; Kiskadden, Trustee, v. Steinle, 203 Fed. 375 (C. C. A. 6th Cir.). The trustee also filed a petition to revise in matter of law, but this is inconsistent with the appeal, and must be dismissed for that reason. Barnes v. Pampel, 192 Fed. 525, 113 C. C. A. 81 (C. C. A. 6th Cir.); Martin v. Globe Bank & Trust Company, 201 Fed. 31 (C. C. A. 6th Cir.).

[2] We thus reach the question stated at the beginning of this opinion. The sums of money which the referee ordered Miller to return to the bankrupt estate were received by him, as stated, on January 9 and 13, 1911. Miller testified that when he became connected with the company, April 1, 1910, he thought it was insolvent, because upon examination he found that it—

"owed $25,000 more than they had represented. Q. You found they were insolvent when you went in there? A. Yes; I didn't know it at the time. I found that out later. I want to correct that statement."

After stating later that he "thought there was a chance to pull it out," he testified that in June and July, 1910, he thought the company was insolvent. Again he was asked:

"What were the assets and liabilities of the company at the time you took charge? A. I don't know exactly, but I think it was about $165,000"—

meaning, as he stated, "debts hanging over it, mortgages, etc."

He explained, further, that the property and assets of the company had not been increased, stating:

"I didn't buy any furniture. I didn't buy anything. It took all my time to fix the plumbing up and the elevators. I didn't buy anything, except something to eat."

This was succeeded by the following questions and answers:

"Then the assets at the time Mr. Cooper took charge as receiver, and the time that you went in as president of the company, were the same? A. Yes. Q. How about the debts? Did the debts increase any during that year? A. Yes; they increased. Q. How much? A. Well, I think along about $7,000 or $8,000."

Thus Miller was well situated to gain knowledge of the company's financial condition, but not to escape the effect of that knowledge when receiving the money. While the intent of the company is not, by reason of the amendment, important here, yet the company was chargeable with the knowledge of its president, and both the company and Miller must have known that the debtor could not pay its other creditors a percentage of their claims similar to the rate he was paying himself, and, consequently, that the enforcement of the transfer would inevitably give to him a preference over the other creditors of the

same class. It also appears that there was a heavy mortgage upon the property; but we do not discover that the company could pay the interest accruing under the mortgage, any more than it could meet its current taxes. The learned trial judge said, among other things, in his opinion:

"The property covered by the mortgage was not sufficient by several thousand dollars to discharge the mortgage debt. The bankrupt's personal property brought several thousand dollars, from which the general creditors may receive a small dividend only. There is no possibility of a surplus for the bankrupt corporation, or all the holders of its capital stock. They inevitably lose all. * * * "

The dual relation of Miller to the company, as its official head and as creditor, we think, justifies the inference that his admissions of the company's insolvent condition meant that he understood the fair value of its property to be less than its debts (section 1, par. 15, of the Bankruptcy Act); and hence it is unnecessary to attempt to determine the full effect of the last amendment to section 60b.[1]

We are constrained to hold that the trustee is entitled to recover of Miller the sums so received by him, with interest, and that, in view of section 57g of the Bankruptcy Act, Miller's claims as a general creditor shall not be allowed unless and until he shall return the money so transferred to him. We cannot from the present record safely estimate or state the amounts of such claims, but they can be readily ascertained and fixed below.

The order covered by the present appeal must be reversed, with costs, and the cause remanded for further proceedings not inconsistent with this opinion.

[1] The learned judge who decided the present case considered this amendment in Re Sam Z. Lorch & Co. (D. C.) 199 Fed. 944, 947. See, also, In re F. M. & S. Q. Carlile (D. C.) 199 Fed. 612; 1 Loveland on Bankruptcy (4th Ed.) § 492; 3 Remington on Bankruptcy, Supplement, § 1401½.