## In re MANUFACTURERS' BOX & LUMBER CO.

(District Court, D. New Jersey. July 26, 1918.)

1. BANKRUPTCY ⬥➡308—CREDITOR'S PARTICIPATION IN ASSETS—PAYMENT OF ASSESSMENTS ON STOCK.

A creditor of a bankrupt corporation, who, as a holder of its capital stock, is liable on calls or assessments, cannot participate in the assets of the estate until he has paid or satisfied such assessments.

2. CORPORATIONS ⬥➡216—LIABILITY OF STOCKHOLDER—WHAT LAW GOVERNS.

Whether a stockholder of a bankrupt corporation is liable to the estate for the difference between the par value of the stock held by him and the amount originally paid therefor is determined by the law of the state where the corporation was incorporated.

3. CORPORATIONS ⬥➡99(2)—STOCKHOLDERS—LIABILITY FOR CORPORATE DEBTS—STOCK ISSUED FOR INSUFFICIENT CONSIDERATION.

Corporation Act, § 49 (2 Comp. St. N. J. 1910, p. 1630), providing that, in the absence of actual fraud, the director's judgment as to the value of the property purchased in consideration of stock shall be conclusive, while legislatively new, is but declaratory of the former law.

4. CORPORATIONS ⬥➡232(2)—PAYMENT OF STOCK SUBSCRIPTIONS—VALIDITY AS TO CREDITORS.

Under the New Jersey decisions payment of a stock subscription is good as against creditors of an insolvent corporation only, where payment has been made in money, or what may fairly be considered as money's worth.

5. CORPORATIONS ⬥➡232(1)—STOCK—PAYMENT—ASSESSMENT.

Where no money was paid for corporate stock when originally issued for property concededly worth less than the par value of the stock, and the directors did not determine the value of the property, it would be assessable, if still in the hands of the original holders.

6. CORPORATIONS ⬥➡244(7)—LIABILITY OF STOCKHOLDER—NOTICE AS TO PAYMENT—LIABILITY TO ASSESSMENT.

Actual notice to a purchaser of corporate stock that it was originally issued without having been fully paid is not necessary and his knowledge of facts impelling an ordinary and careful investor to inquire whether it was fully paid, which inquiry would have shown that it was not, would be sufficient notice to make him liable to an assessment.

7. CORPORATIONS ⬥➡244(7)—UNPAID STOCK—LIABILITY OF HOLDER—IMPUTED KNOWLEDGE.

A purchaser of corporate stock from the incorporators who knew that the corporation was in financial difficulties, and that part of its pledged book accounts, taken up by him in consideration of its company's note and all the stock, were not genuine, and who examined the books, was chargeable with further inquiry, which would have shown him that property taken by the corporation was an inadequate consideration for the original stock.

8. NOTICE ⬥➡6—DUTY OF INQUIRY.

Neither stupidity nor heedlessness any more than a fraudulent motive, will save one chargeable with making inquiry from the consequences of a knowledge which such an inquiry would have ascertained, as one may not take advantage of his own wrong, and as the law imputes to him that knowledge of facts which he would have ascertained, had he performed his duty.

9. CORPORATIONS ⬥➡232(1)—UNPAID STOCK—LIABILITY OF SHAREOWNER.

A holder of corporate stock, with imputed knowledge that it had been issued by the corporation to its incorporators for property which was an inadequate consideration, would be liable to an assessment thereon for such amount, not exceeding the difference between the fair value of the

property and the par value of the stock, as would be needed to pay allowed claims in bankruptcy and administration expenses.

10. BANKRUPTCY ⬡288(1)—LIABILITY OF STOCKHOLDER—ASSESSMENT—ENFORCEMENT.

Where no assessment had been made against the holder of stock issued to incorporators for property not an adequate consideration, it could not be enforced, on objection by a creditor of the bankrupt corporation to the holder's claim, without the holder's assent, as the proceeding is summary, and direct proceedings to enforce the assessment would have to be taken by the trustee.

11. BANKRUPTCY ⬡308—CLAIM AGAINST ESTATE—ALLOWANCE.

Where a claimant against a bankrupt corporation was liable to an assessment on his stock, his claim should not be formally allowed until the amount due on his stock was determined.

In Bankruptcy. In the matter of the Manufacturers' Box & Lumber Company, bankrupt. On review of a referee's order overruling a creditor's objection and allowing the claim of James H. Beals. Reversed.

Bilder & Bilder, of Newark, N. J. (Nathan Bilder, of Newark, N. J., of counsel), for objecting creditor.

Clifford L. Newman, of Paterson, N. J., for claimant.

RELLSTAB, District Judge. The bankrupt was incorporated in February, 1912, under the laws of New Jersey, and carried on the lumber business in that state. The total capital stock of the bankrupt issued and outstanding is $10,000, par value, divided into 100 shares. This was issued for property purchased from a copartnership composed of three members, who, for a period of about five months previous thereto, had carried on the same business. This copartnership had begun business with less than $1,000 capital, and the net assets at the time the corporation was formed were less than $2,000.

It is conceded that the fair value of the property thus turned over was very much less than the par value of the stock issued therefor. James H. Beals is the holder of 95 per cent. of the stock so issued, which he obtained from the incorporators of the bankrupt. He presented a claim against the estate for the sum of $14,947.67. This claim was objected to by one of the creditors. In substance, the only pertinent ground of objection is that the bankrupt issued this stock without receiving any consideration, and that it is liable to assessments in Beals' hands.

Upon the evidence taken before the referee, he found that the property for which this stock was issued was apparently worth $2,000, that Beals was a holder for value, and that the evidence failed to show that he "was informed, or in any way had notice, of the fact that the shares of stock were not fully paid up," and that it was not liable to an assessment in his hands. He thereupon made an order overruling the objections and allowing the claim, which order is now here for review.

[1, 2] It is conceded that a creditor of a bankrupt corporation, who, as a shareholder of the corporation's capital stock, is liable on calls or assessments to be made against said stock, will not be permitted to participate in the assets of the estate until he has paid or satisfied said

assessments. See In re Wiener & Goodman Shoe Co. (D. C.) 96 Fed. 949, 3 Am. Bankr. Rep. 200; In re Duryea Power Co. (D. C.) 159 Fed. 783, 20 Am. Bankr. Rep. 219; In re Standard Dairy & Ice Co., 20 Am. Bankr. Rep. 321. Whether a stockholder of a bankrupt corporation is liable to the estate for the difference between the par value of the stock held by him and the amount originally paid therefor is determined by the law of the state where the company was incorporated. Kiskadden v. Steinle, 203 Fed. 375, 121 C. C. A. 559, 29 Am. Bankr. Rep. 346; Courtney v. Croxton, 239 Fed. 247, 152 C. C. A. 235, 38 Am. Bankr. Rep. 560, and cases cited.

[3, 4] The pertinent provisions of the New Jersey Corporation Act (Rev. of 1896; 2 Comp. Stat. N. J. pp. 1592, 1610, 1630) are:

"21. *Liability of Stockholders on Nonpaid-up Stock.*—Where the whole capital of a corporation shall not have been paid in, and the capital paid shall be insufficient to satisfy its debts and obligations, each stockholder shall be bound to pay on each share held by him the sum necessary to complete the amount of such share, as fixed by the charter of the corporation, or such proportion of that sum as shall be required to satisfy such debts and obligations." P. L. 1896, p. 284.

"48. *Payment of Capital Stock to be in Money.*—* * * Nothing but money shall be considered as payment of any part of the capital stock of any corporation organized under this act, except as hereinafter provided in case of the purchase of property. * * *" P. L. 1896, p. 293.

"49. *Purchase of Property and Issue of Stock to Pay Therefor.*—Any corporation formed under this act may purchase * * * property necessary for its business, * * * and issue stock to the amount of the value thereof in payment therefor, and the stock so issued shall be full-paid stock and not liable to any further call, neither shall the holder thereof be liable for any further payment under any of the provisions of this act; and in the absence of actual fraud in the transaction, the judgment of the directors as to the value of the property purchased shall be conclusive; and in all statements and reports of the corporation to be published or filed this stock shall not be stated or reported as being issued for cash paid to the corporation, but shall be reported in this respect according to the fact." P. L. 1896, p. 293.

Sections 21 and 48 are substantially re-enactments. The part of section 49 relative to the conclusive effect of the directors' valuation, while legislatively new, is but declaratory of the old law. Holcombe v. Trenton White City Co., 80 N. J. Eq. 122, 141, 142, 82 Atl. 618 and cases cited. With reference to the stockholders' liability to creditors of insolvent corporations, the rule declared in Wetherbee v. Baker, 35 N. J. Eq. 501, "that payment of stock subscriptions is good as against creditors, only where payment has been made in money or in what may fairly be considered as money's worth," has been inexorably enforced in New Jersey whenever that question has been judicially considered. See Donald v. American Smelting & Refining Co., 62 N. J. Eq. 729, 48 Atl. 771, 1116; See v. Heppenheimer, 69 N. J. Eq. 36, 61 Atl. 843; Easton National Bank v. American Brick & Tile Co., 70 N. J. Eq. 722, 64 Atl. 1095, and 70 N. J. Eq. 732, 64 Atl. 917, 8 L. R. A. (N. S.) 271, 10 Ann. Cas. 84 (two cases); Holcombe v. Trenton White City Co., supra.

[5] In the present case no money was paid for the stock when originally issued, and as it was issued for property concededly worth less than the par value of the stock, and without the directors determining

the value of said property, it would be assessable, if it were still in the hands of the original holders. Section 21, in declaring the liability of stockholders in case the stock is not fully paid, makes no distinction between original and subsequent holders. Whether a bona fide purchaser of stock, for value, without notice that it was not fully paid when issued, can be held liable to creditors upon the corporation's insolvency, under the New Jersey statute, is not necessary to be decided, for the reasons that will presently appear.

None of the original holders of the stock had money or credit, and in less than four months after its incorporation it was evident that the company was conducting a losing business. It was struggling along on borrowed money. The company's book accounts and 66 shares of its capital stock, representing the shares of two of the copartners, had been pledged for the payment of some of said loans, and the pledgee was pressing for payment. In May, 1912, Mattison, the other copartner and an incorporator, who held 33 of said shares of capital stock in his own name, approached Beals, an acquaintance of some years, and asked his financial assistance. After several interviews, in the course of which he was informed of the company's financial straits and that two of the copartners had been guilty of fraudulent practices by padding some of the accounts so pledged, Beals agreed to loan the company enough money to redeem the book accounts, upon condition that all its issued capital stock be given to him. After some parleying this condition was accepted, with the modification that, upon the payment of said loan within six years, Mattison was to have his 33 shares returned to him. Thereupon Beals paid to the pledgee of the book accounts, etc., the sum of $8,534.47, the aggregate of its loans, the book accounts were turned over to the company, and Beals received the latter's note for that amount and the 66 shares so pledged and Mattison's 33 shares.

[6] The evidence does not prove that Beals had actual notice that the stock so issued to, or held for, the copartners was not fully paid. However, actual notice was not necessary; imputed notice would be sufficient. If he had knowledge of facts which would impel an ordinary, intelligent, and careful investor or purchaser of stocks to inquire whether they were fully paid, and such inquiry, if prosecuted, would have shown that they had not been so paid, that would be sufficient notice to make him liable. In See v. Heppenheimer, supra, 69 N. J. Eq. at page 87, 61 Atl. 843, Vice Chancellor Pitney said:

"I hold, further, that the fact that they were receiving for $1,000 in cash a mortgage bond for $1,000 and a bonus of $600 of stock of a company in process of formation was sufficient, of itself, to show them, or at least to put them on inquiry, that the stock so issued had not been paid for, either in cash or in its equivalent in property."

In Easton National Bank v. American Brick & Tile Co., 69 N. J. Eq. 326, at page 334, 60 Atl. 54, at page 57, decision modified on appeal, but not on this point, 70 N. J. Eq. 722, 64 Atl. 1095, and 70 N. J. Eq. 732, 734, 64 Atl. 917, 8 L. R. A. (N. S.) 271, 10 Ann. Cas. 84, Vice Chancellor (now Justice) Bergen said:

"The liability of transferees for assessments on account of unpaid stock has been the subject of much consideration by the courts of this country, re-

sulting in radical differences of opinion, but in my judgment the weight of authority and sound reason support the view that a bona fide transferee of stock, the certificate for which recites that it is full paid, is not liable to make good the contract of the original subscriber if the transferee has no knowledge that the subscriber has not paid in full, nor notice of any fact from which knowledge may be inferred, or which requires him to inquire as to the truth of such statement."

That imputed notice is the equivalent of actual notice has been held by the courts of other states. See Garden City Sand Co. v. American Refuse Crematory Co., 205 Ill. 42, 68 N. E. 724; Wishard v. Hansen, 99 Iowa, 307, 68 N. W. 691, 61 Am. St. Rep. 238; Gillette v. Chicago Trust Co., 230 Ill. 393, 82 N. E. 891. See, also, Thompson on Corporations (2d Ed.) §§ 4385-4387.

[7-9] The evidence establishes that without the issue of the stock to Beals he would not have advanced the money to redeem the book accounts. He knew that the company was in financial difficulties, that the pledgee of the accounts was pressing for a payment of its loans, and that some part of these book accounts was not genuine. In part, Beals was actuated by his friendship for Mattison; but the impelling consideration for his making the loan was the putting of his son into a business which he hoped would become profitable. In taking the company's note and its capital stock, he carried out such purpose and put himself in the place of the original holders, to secure for himself the possible fruits of the enterprise.

Beals testified that he knew that, if the stock had not been fully paid, it would be subject to assessment. He inquired of Mattison, who was the only one of the three copartners active in the company's business, whether said stock had been fully paid, and was informed that it had, and that it had been paid by property purchased from the partnership. Before he advanced the money, he looked over the plant and had his son examine the books. He seems to have made no further inquiry as to the value of the property for which the stock had been issued, or why stock of the par value of $10,000, rather than some other sum, was fixed as the consideration for its transfer.

Was he chargeable in law to make further inquiry? A perusal of the minutes of the company would have advised him that, in accepting the property and ordering the issuance of stock therefor, the board of directors had given no expression of their judgment of its value. Inquiry of Mattison, who knew that the property so purchased was grossly overvalued, would either have elicited the true value, or, if he had attempted to deceive him, his deception would have been exposed by comparing the property on hand with the assets and liabilities shown by the books of the company. His inspection of the plant, made before he advanced the loan, disclosed the amount of lumber, etc., on hand. He knew that they had not made money, and the books were there to show that the company had been actually losing money from the very beginning.

Beals, in acquiring the stock, was not in the position of one who goes into the open market and purchases stock issued by a company which has been actively engaged in business for a long period, and whose stocks have become marketable merchandise. The protec-

tion thrown about such a purchaser cannot be accorded Beals. He was not even a purchaser, but a donee. To him the stock was a bonus—obtained at his own insistence. He was not satisfied to be merely a creditor of the company, but insisted upon being practically its owner. He became both—a creditor for value; the owner by gift. His advent into the company was made known to the company's creditors; and in the financial statements, issued by it to the mercantile agencies, he was named as the owner of 95 per cent. of the company's capital stock. Under the New Jersey statute, his stock, not having been fully paid, was an asset in favor of the company's creditors. Beals took it in circumstances that called for an ascertainment on his part of the particulars of the transaction resulting in its issue.

The company had but recently been formed. Its business had been unprofitable. This, as well as that the capital stock had been issued for property, was known to Beals. That the property was an inadequate consideration could have been readily ascertained by him before he took over the stock. A superficial examination of the books and merchandise on hand would have yielded this information. As noted, he made some inquiry, examined the plant, and had his son examine the company's books. If he failed to learn that the property for which the stock was issued was grossly overvalued, it was due to his failure to follow the clue which such inquiry and examination uncovered. Neither stupidity nor heedlessness, any more than a fraudulent motive, will save one who is chargeable with making inquiry from the consequences of a knowledge which such an inquiry would have elicited. The law will not permit one to take advantage of his own wrong, and it imputes to him that knowledge of facts which he would have ascertained, had he performed his duty. With this imputed knowledge, Beals would be liable to an assessment on his stockholdings for such amount, not exceeding the difference between the fair value of the property purchased and the par value of the stock issued therefor, as would be needed to pay the allowed claims and administration expenses.

[10] However, no assessment has been made on this stock, and Beals' liability cannot be enforced in this proceeding, which is summary in character, without his assent, and, as he objects to such a course, direct proceedings to produce such an assessment will have to be instituted by the trustee. Kiskadden v. Steinle, supra; In re Haley (C. C. A. 6) 158 Fed. 74, 85 C. C. A. 404, 19 Am. Bankr. Rep. 313 (certiorari denied 209 U. S. 546, 28 Sup. Ct. 757, 52 L. Ed. 920); In re Remington Automobile & Motor Co. (C. C. A. 2) 153 Fed. 345, 347, 82 C. C. A. 421, 18 Am. Bankr. Rep. 389; In re La Jolla Lumber & Mill Co. (D. C.) 243 Fed. 1004, 40 Am. Bankr. Rep. 273. See In re Newfoundland Syndicate (D. C.) 196 Fed. 443, 28 Am. Bankr. Rep. 119 (also 201 Fed. 917, 120 C. C. A. 255, 29 Am. Bankr. Rep. 858), as to procedure and jurisdiction to enforce stockholders' liability for unpaid stock.

[11] But as, in my judgment, on the evidence before me, Beals is liable to a stock assessment, his claim as a creditor should not be formally allowed until the amount due on his stock has been deter-

mined. In re Wiener & Goodman Shoe Co., supra; In re Duryea Power Co., supra.

The referee's order allowing Beals' claim is therefore reversed, and the allowance of the claim deferred until after appropriate proceedings to recover the amount due on said shares of stock have been pressed to a finality.